******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STEPHEN M. TUNICK ET AL. *v.* BARBARA
TUNICK ET AL.
(AC 42031)

Keller, Elgo and Lavery, Js.

*Syllabus*

The plaintiff, who was a remainder beneficiary of a revocable trust, brought
an action for damages against his sisters, B and R, and against D, the
administrator of the estate of the plaintiff's mother, S, in connection
with the administration of the trust. The plaintiff claimed, inter alia,
that B and S, who had been cotrustees of the trust, had breached their
fiduciary duties to him, and that S, D and R had fraudulently concealed,
pursuant to statute (§ 52-595), facts that were necessary to his causes
of action against them. In 2004, S and B filed an application with the
Probate Court to remove the plaintiff as a trustee pursuant to statute
(§ 45a-242 (a)). The court thereafter issued a written decree in which
it found, inter alia, that the plaintiff had neglected to perform the duties
of the trust and ordered his removal as a trustee. The court also issued
orders pertaining to certain antique automobiles that were part of the
trust. S and B thereafter acted as cotrustees until June, 2013, when
the Probate Court issued an order removing them as cotrustees and
appointing a successor trustee. After S died in 2015, the Probate Court
appointed D the administrator of her estate. The plaintiff commenced
his action against B, R and D in May, 2017. The trial court thereafter
granted motions to strike that were filed by D and B as to certain counts
of the complaint against them that alleged that the trust was a contract
they had breached. R, D and B subsequently filed separate motions for
summary judgment in May, 2018, in which they alleged that all counts
of the complaint against them were time barred pursuant to the three
year tort statute (§ 52-577) of limitations. While the three motions for
summary judgment were pending, the plaintiff filed a revised complaint
that added a count against B sounding in unjust enrichment, which was
not thereafter adjudicated in the trial court's ruling on B's motion for
summary judgment. The trial court then granted the summary judgment
motions filed by R, D and B. The court determined, inter alia, that the
plaintiff's allegations of wrongdoing described conduct that occurred
from 1997 to 2013, and that R, D and B had met their burden of showing
that the plaintiff's claims were time barred by § 52-577. The court further
determined that there was no evidentiary basis for the plaintiff's claims
that the statute of limitations in § 52-577 was tolled by the continuous
course of conduct doctrine or by fraudulent concealment, and it con-
cluded that no genuine issues of material fact existed as to when the
plaintiff's causes of action accrued and when his action was com-
menced. *Held*:

1. This court lacked subject matter jurisdiction over that portion of the
plaintiff's appeal that concerned the partial summary judgment rendered
in favor of B, as it was undisputed that his unjust enrichment count
against her remained pending; the plaintiff did not request a written
determination from the trial court regarding the significance of the issues
resolved by the partial summary judgment, the record did not contain
a withdrawal or an unconditional abandonment of the unjust enrichment
count, and, as that count remained unadjudicated, it presented the possi-
bility that B could be found liable to the plaintiff for damages; accord-
ingly, the portion of the plaintiff's appeal as to B was dismissed.

2. The trial court properly granted D's motion to strike the breach of contract
count in the plaintiff's complaint, as S, by having agreed to perform her
duties as a trustee, did not enter into a contract to perform provisions
of the trust that were enforceable by an action sounding in contract;
the plaintiff provided no authority in which a court has held that a trust
beneficiary may bring an action sounding in contract against a trustee,
the plaintiff having disregarded several critical distinctions between a
trust and a contract, including that a trust needs no consideration to
support it.

3. The plaintiff could not prevail on his claim that his causes of action as

a remainder beneficiary did not become ripe until S's death, as that proposition contravened precedent that § 52-577 operates as a bar to tort claims irrespective of when they accrue; none of the conduct on the part of the defendants that the plaintiff detailed in his complaint was alleged to have occurred after June, 2013, when S and B were removed as trustees, and, because the dates alleged in the complaint were the metric for purposes of applying the limitation period of § 52-577, the trial court properly concluded that the defendants satisfied their burden of demonstrating the applicability of § 52-577 to the plaintiff's tort claims.

4. The plaintiff could not prevail on his claim that genuine issues of material fact existed as to whether § 52-577 was tolled by the pendency of a final accounting in the Probate Court, the continuing course of conduct doctrine and fraudulent concealment:

a. This court found unavailing the plaintiff's assertion that the trial court made a legal error when it concluded that the limitation period of § 52-577 commenced in 2013 because the Probate Court had not yet approved the accountings submitted by S and B: the plaintiff's reliance on the statute (§ 52-579) governing actions against a surety on a probate bond was misplaced, as the limitation period in § 52-579 expressly is conditioned on the Probate Court's approval of a final accounting, there was no allegation or evidence of the existence of a probate bond, the operative complaint contained no claim against the surety of a probate bond, and the only facts under § 52-577 that were material to the trial court's ruling were the date of the wrongful conduct alleged in the complaint and the date the action was filed; moreover, the plaintiff provided no authority, nor was this court aware of any, in which it has been held that the limitation period of § 52-577 automatically is tolled for tort claims against a trustee due to the pendency of a final accounting in the Probate Court, this court was not inclined to articulate such a per se rule, and the accounting issue, which implicated the fiduciary duty of a removed trustee, properly fell within the purview of the continuous course of conduct doctrine.

b. The trial court properly concluded that the continuing course of conduct doctrine did not apply to the plaintiff's claims against R; the plaintiff asserted in his complaint that he suffered money damages as a result of R's conduct from 1997 through 2013, he did not offer affidavits or other proof that R engaged in activity with respect to the trust after June, 2013, he did not allege that R owed a legal duty to him, and R never was a trustee and did not stand in a fiduciary relation to the plaintiff.

c. Although the plaintiff met his burden of establishing that S owed a continuing fiduciary duty to account for trust assets following her removal as a trustee in June, 2013, he failed to establish a genuine issue of material fact as to whether S and D continually breached that fiduciary duty to the remainder beneficiaries, which resulted in an enhanced injury to him following S's removal as a trustee that would toll the limitation period in § 52-577; contrary to the plaintiff's allegation that S and D engaged in a continuous course of conduct by failing to account for the automobiles and automobile parts, which was the only factual allegation in the plaintiff's pleadings of a continuing breach of the fiduciary duty owed to remainder beneficiaries subsequent to S's removal, that failure did not constitute a series of events that gave rise to a cumulative injury, and the subsequent injury the plaintiff allegedly sustained following S's removal as trustee, which was the failure to obtain an accounting of the automobile assets, was the same injury he allegedly incurred prior to her removal.

d. The trial court properly concluded that no genuine issue of material fact existed with respect to the plaintiff's claim that S, D and R fraudulently concealed his causes of action against them such that the limitation period for those causes of action was tolled by § 52-595: the plaintiff's assertion that the defendants should bear the burden to demonstrate that they did not engage in fraudulent concealment was unavailing, as our Supreme Court has held that the burden of establishing fraudulent concealment belongs to the party seeking to avail itself of that tolling doctrine, and this court, as an intermediate appellate tribunal, was not at liberty to modify, reconsider or overrule precedent of the Supreme Court; furthermore, the plaintiff did not provide clear and unequivocal evidence that S, D or R had actual awareness of the facts necessary to establish the plaintiff's causes of action or that they intentionally concealed such facts from him, as the trial court carefully reviewed all of

the materials that the plaintiff submitted in opposition to the defendants' motions for summary judgment, which did not show any intent on the part of the defendants to conceal facts or support a finding that their alleged concealment was directed toward delaying commencement of an action against them.

5. The plaintiff's appeal as to his claim that the trial court improperly denied his motion to open the judgment was moot; the plaintiff's request to submit what he asserted was newly discovered evidence that contravened D's contention that S had no continuing duty to the remainder trustees after her removal as a cotrustee in June, 2013, ostensibly supported this court's legal conclusion that S owed such a duty following her removal; accordingly, there was no practical relief that could be afforded to the plaintiff, and that portion of his appeal challenging the propriety of the denial of his motion to open the judgment was dismissed.

Argued February 10—officially released December 1, 2020

*Procedural History*

Action for, inter alia, breach of fiduciary duty, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Truglia, J.*, granted the motions to strike filed by the defendant Richard S. DiPreta et al.; thereafter, the named plaintiff filed an amended complaint; subsequently, the court granted in part the motion for summary judgment filed by the named defendant, granted the motions for summary judgment filed by the defendant Roberta G. Tunick et al. and rendered judgment thereon, from which the named plaintiff appealed to this court; thereafter, the court, *Truglia, J.*, issued an articulation of its decision as to the named defendant; subsequently, the court, *Truglia, J.*, denied the named plaintiff's motion to open the judgment, and the named plaintiff filed an amended appeal. *Appeal dismissed in part; affirmed.*

*William W. Taylor*, for the appellant (named plaintiff).

*Richard E. Castiglione*, for the appellee (named defendant).

*Steven M. Frederick*, with whom, on the brief, was *Sarah Gleason*, for the appellee (defendant Roberta G. Tunick).

*Robert C.E. Laney*, with whom, on the brief, was *Karen L. Allison*, for the appellee (defendant Richard S. DiPreta).

*Opinion*

ELGO, J. This case concerns a dispute among family members over the administration of assets held in a trust created by the family patriarch. The plaintiff Stephen M. Tunick appeals from the judgment of the trial court rendered in favor of the defendants, Barbara Tunick, Roberta G. Tunick, and Richard S. DiPreta, administrator of the estate of Sylvia G. Tunick (estate).[1] On appeal, the plaintiff contends that (1) the court improperly granted DiPreta's motion to strike a breach of contract count, (2) the court improperly rejected the plaintiff's claim that his causes of action as a remainder beneficiary did not become ripe until the death of the primary beneficiary, (3) genuine issues of material fact exist as to whether the plaintiff's claims are time barred under General Statutes § 52-577, and (4) the court abused its discretion in declining to grant the plaintiff's motion to open the judgment. We dismiss the appeal in part and affirm the judgment of the trial court in all other respects.

Mindful of the procedural posture of this case, we set forth the following facts as gleaned from the pleadings, affidavits, and other proof submitted, viewed in the light most favorable to the plaintiff. See, e.g., *Martinelli* v. *Fusi*, 290 Conn. 347, 350, 963 A.2d 640 (2009). The settlor, David H. Tunick (settlor), established the David H. Tunick revocable trust (trust) in 1981. Among other things, the trust corpus included real property and antique automobiles. The settlor and his wife, Sylvia, were named as the primary beneficiaries of the trust, and their three children—the plaintiff, Barbara, and Roberta—were named as remainder beneficiaries. Although the plaintiff and Barbara initially were appointed cotrustees of the trust, it was amended in 1993 to include Sylvia as a third cotrustee.

The trust provided in relevant part that Sylvia would become the sole primary beneficiary of the trust upon the settlor's death and that all income and principal of the trust would be used for her benefit. The trust further provided that, upon Sylvia's death, the plaintiff, Barbara, and Roberta would receive equal shares of "the remaining trust property."

The settlor died in 1997, leaving Sylvia as the sole primary beneficiary of the trust. In 2004, Sylvia and Barbara filed an application with the Probate Court to remove the plaintiff as a trustee pursuant to General Statutes § 45a-242 (a). Following a hearing, the court issued a written decree, in which it found that the plaintiff "has neglected to perform the duties of the trust, has refused to account and has improperly distributed and wasted [t]rust property in his charge, and that it would be in the best interests of the beneficiaries to remove him as [t]rustee." The court thus ordered the plaintiff to be removed as a trustee and to "deliver any

and all property belonging to the trust [to] the remaining [t]rustees." In addition, the court issued a specific order regarding the antique automobile assets of the trust, stating in relevant part: "[I]n regard to . . . antique [automobiles], they are to be sold, and . . . any [automobiles] that are kept by the beneficiaries or remainder beneficiaries of the trust, the value of the [automobile] shall be taken against the beneficiary's share of the trust. Once the [automobiles] are sold, a corporate trustee will be appointed and the remaining [t]rustees will resign . . . ."

Sylvia and Barbara thereafter acted as cotrustees of the trust from July 7, 2004, until June 11, 2013. On June 11, 2013, the Probate Court issued an order removing Sylvia and Barbara as cotrustees and appointing Richard J. Margenot as the successor trustee. Sylvia died on July 24, 2015, and DiPreta was appointed as the administrator of her estate.

The plaintiff commenced this civil action by service of process on May 5, 2017. He filed a first amended complaint containing thirteen counts on July 6, 2017, which he further revised on September 13, 2017. In response, DiPreta moved to strike count thirteen of the complaint, which alleged in relevant part that the trust was a contract that Sylvia had breached. In his motion to strike, DiPreta argued that the plaintiff could not maintain a breach of contract claim because a trust is not a contract. The trial court agreed with DiPreta and granted the motion to strike.

On February 7, 2018, the plaintiff filed the operative complaint, his second revised complaint. It contains twelve counts, eleven of which sound in tort. Counts one and two allege breach of fiduciary duty against Barbara and Sylvia, respectively. Counts three, four and five allege conversion against each defendant; counts six, seven and eight allege civil theft in violation of General Statutes § 52-564 against each defendant; and counts nine, ten and eleven allege fraudulent misrepresentation against each defendant. Last, count twelve asserts a breach of contract claim against Barbara.

On April 23, 2018, Barbara filed a motion to strike count twelve, claiming that it was legally insufficient because a trust is not a contract. While that motion was pending, Roberta and DiPreta filed separate motions for summary judgment on May 10, 2018, alleging that all counts against them were time barred pursuant to § 52-577.[2] One day later, Barbara moved for summary judgment as well, arguing that counts one, four, six and nine against her were time barred pursuant to § 52-577. Barbara further maintained that she was entitled to judgment as a matter of law on count twelve because a trust is not a contract. In response to the defendants' motions for summary judgment, the plaintiff filed an opposition on June 15, 2018, that was accompanied by numerous exhibits, including an affidavit from

Margenot, who had been appointed as successor trustee to the trust on June 11, 2013. In his memorandum of law in opposition to the three motions for summary judgment, the plaintiff argued that (1) the statute of limitations contained in § 52-577 did not begin to run until Sylvia's death in 2015, (2) the statute of limitations did not begin to run due to the pendency of an accounting before the Probate Court, and (3) the statute of limitations was tolled by a continuing course of conduct and, alternatively, fraudulent concealment on the part of the defendants.

On June 21, 2018, the court granted Barbara's motion to strike the breach of contract count. While the three motions for summary judgment remained pending, the plaintiff filed a third revised complaint on July 5, 2018. That complaint is largely identical to the operative complaint, with one exception—the plaintiff omitted the breach of contract count against Barbara and added an unjust enrichment count against her. On July 13, 2018, Barbara filed an objection to the plaintiff's third revised complaint, which the court overruled.

On July 16, 2018, the court rendered summary judgment in favor of all three defendants. In its memorandum of decision, the court stated in relevant part: "[T]he court agrees that all of the plaintiff's allegations of wrongdoing in the complaint describe conduct by the defendants from 1997 to 2013. . . . The plaintiff does not contest the defendants' assertions that [Barbara] and [Sylvia] ceased acting as trustees in June, 2013. Also, there is no evidence showing that [Roberta] took any action in concert with either [Barbara] or [Sylvia] after June 11, 2013. There is no evidence (and the plaintiff does not allege) that Roberta's duties extended to anything other than assisting her mother and sister with bookkeeping for the trust, and it [is] clear that the need for those services ceased to exist after June 11, 2013. In short, the defendants have met their preliminary burden of showing that the plaintiff's claims are time barred by the three year statute of limitations under § 52-577. The burden now shifts to the plaintiff to show that genuine issues of material fact exist upon which the trier of fact could conclude that the statute of limitations has been tolled to May 5, 2017, the date of service. . . . [T]he court rejects all the tolling arguments advanced by the plaintiff." (Citation omitted; footnote omitted.) The court then concluded: "[T]he court finds that no genuine issues of material fact [exist] as to when the plaintiff's causes of action accrued and when the present action was commenced. The court also finds no evidentiary basis for the plaintiff's claims that the statute of limitations is tolled by the continuous course of conduct doctrine or by fraudulent concealment. The defendants' motions for summary judgment are granted as to all remaining counts in the complaint."

On August 6, 2018, the plaintiff filed a motion for

reargument and reconsideration and a motion for articulation, which the court denied. On August 16, 2018, Barbara filed a motion for articulation, seeking clarification as to the unjust enrichment count contained in the plaintiff's third revised complaint that he had filed while the motions for summary judgment were pending. By order dated August 24, 2018, the court issued an articulation, stating, in relevant part: "The court entered judgment in favor of all three defendants on all counts remaining as of that date. Prior to that date, however, on July 5, 2018, the plaintiff filed a timely third revised complaint, adding a new count of unjust enrichment against [Barbara]. That new count was not addressed by the defendant's motion for summary judgment. Therefore, new count twelve of the plaintiff's third revised complaint was not included in the court's ruling on [Barbara's] motion for summary judgment. Judgment enters in favor of [Roberta] and [DiPreta] . . . on all counts . . . and in favor of [Barbara] on all counts against her except [the unjust enrichment count] of the plaintiff's third revised complaint." The plaintiff commenced this appeal days later.

On December 21, 2018, the plaintiff filed a motion to open the judgment, which was predicated on testimony provided by DiPreta during a November 20, 2018 probate proceeding. The court denied that motion. The plaintiff thereafter sought an articulation of that ruling, as well as reconsideration thereon. The court denied those requests, and this amended appeal followed.[3]

I

Before addressing the claims advanced by the plaintiff in this appeal, we first consider a jurisdictional question regarding the plaintiff's action against Barbara. Prior to oral argument, this court sua sponte instructed the parties to be prepared to address "whether the portion of this appeal challenging the trial court's rulings as to [Barbara] should be dismissed for lack of a final judgment because the trial court has yet to render a final judgment as to [Barbara] by disposing of the unjust enrichment count directed against her. See Practice Book §§ 61-2 [and] 61-3." We now conclude that this portion of the appeal must be dismissed.

"The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law . . . . The jurisdiction of the appellate courts is restricted to appeals from judgments that are final. General Statutes §§ 51-197a and 52-263; Practice Book § [61-1] . . . . The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear." (Internal quotation marks omit-

ted.) *Mazurek* v. *Great American Ins. Co.*, 284 Conn. 16, 33, 930 A.2d 682 (2007); see also, e.g., *In re Santiago G.*, 325 Conn. 221, 229, 157 A.3d 60 (2017) (lack of final judgment constitutes jurisdictional defect that necessitates dismissal of appeal).

Our precedent further instructs that "[a] judgment that disposes of only a part of a complaint is not a final judgment . . . unless the partial judgment disposes of all causes of action against a particular party or parties; see Practice Book § 61-3; or if the trial court makes a written determination regarding the significance of the issues resolved by the judgment and the chief justice or chief judge of the court having appellate jurisdiction concurs. See Practice Book § 61-4 (a)." (Internal quotation marks omitted.) *Tyler* v. *Tyler*, 151 Conn. App. 98, 103, 93 A.3d 1179 (2014). It is undisputed that the partial summary judgment rendered by the court on July 16, 2018, did not dispose of *all* causes of action against Barbara, as the unjust enrichment count remained pending. In addition, the plaintiff has not requested a written determination from the trial court regarding the significance of the issues resolved by the partial summary judgment entered against Barbara.

As a result, the plaintiff could appeal from the partial summary judgment "only if the remaining causes of action or claims for relief [were] withdrawn or unconditionally abandoned before the appeal [was] taken." *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 717, 183 A.3d 1164 (2018). The record before us does not contain a withdrawal or an unconditional abandonment of the unjust enrichment count by the plaintiff. To paraphrase our Supreme Court, not only does that second count remain unadjudicated, it also presents the possibility that Barbara could be found liable to the plaintiff for damages. See id., 726. In such instances, "it cannot be said that further proceedings could have no effect" on the parties. Id.; see also *State* v. *Ebenstein*, 219 Conn. 384, 389–90, 593 A.2d 961 (1991) (dismissing appeal from partial summary judgment for lack of final judgment and emphasizing that parties will still be before trial court for final determination of ancillary claim).

We conclude that the plaintiff has not appealed from a final judgment with respect to his action against Barbara, as the unjust enrichment count remains pending. Accordingly, this court lacks subject matter jurisdiction over that portion of the plaintiff's appeal concerning the partial summary judgment rendered in favor of Barbara.[4]

II

The plaintiff claims that the court improperly granted DiPreta's motion to strike the breach of contract count of his first amended complaint. We disagree.

The standard that governs our review of the granting of a motion to strike is well established. "Because a

motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling . . . is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) *Sepega* v. *DeLaura*, 326 Conn. 788, 791, 167 A.3d 916 (2017); see also *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 68, 700 A.2d 655 (1997) ("[a] determination regarding the legal sufficiency of a claim is . . . a conclusion of law, not a finding of fact").

In count thirteen of his first amended complaint, as revised on September 13, 2017, the plaintiff alleged in relevant part that the trust is a "contract" and that Sylvia had "breached the contract by her refusal to follow the [t]rust instrument, and [by] her unlawful actions as fiduciary to said [t]rust." In moving to strike that count, DiPreta argued that the plaintiff could not maintain a breach of contract claim because "a trust is not a contract, but rather a conveyance of an equitable interest in property . . . ." The trial court agreed and granted the motion to strike.

We conclude that the court's determination was proper. The plaintiff has provided this court with no authority in which a court has held that a trust beneficiary may bring an action sounding in contract against a trustee for breaching the terms of a trust. The overwhelming weight of authority indicates otherwise. As our Supreme Court has emphasized, "[a] trust may be created without notice to or acceptance by any beneficiary or trustee . . . and in the absence of consideration." (Citation omitted; internal quotation marks omitted.) *Palozie* v. *Palozie*, 283 Conn. 538, 545, 927 A.2d 903 (2007); cf. *Chiulli* v. *Chiulli*, Superior Court, judicial district of Hartford, Docket No. CV-12-6036511-S (July 8, 2014) ("[t]he essential terms of a valid contract are an offer, acceptance of that offer, and consideration" (internal quotation marks omitted)) (reprinted at 161 Conn. App. 638, 647, 127 A.3d 1146 (2015)); see also 1 R. Lord, Williston on Contracts (4th Ed. 2007) § 1:5, p. 38 (express contract requires "mutual assent or offer and acceptance, consideration, legal capacity, and a lawful subject matter"). The Restatement (Second) of Trusts likewise notes that "[a] trustee who fails to perform his duties as trustee is not liable to the beneficiary for breach of contract . . . . The creation of a trust is conceived of as a conveyance of the beneficial interest in the trust property rather than as a contract. . . . The trustee by accepting the trust and agreeing to perform his duties as trustee does not make a contract to perform the trust enforceable in an action at law." 1 Restatement (Second), Trusts § 197, comment (b), pp. 433–34 (1959); accord *In re Naarden Trust*, 195 Ariz. 526, 530, 990 P.2d 1085 (App. 1999) ("[T]he undertaking between the settlor and trustee is not properly charac-

terized as contractual and does not stem from the premise of mutual assent to an exchange of promises. . . . Therefore, although the trustee may be liable for a breach of fiduciary duties, its undertakings or promises in a trust instrument are not normally 'contractual.' "), review denied, Arizona Supreme Court (January 4, 2000); *Gibbons* v. *Anderson*, 575 S.W.3d 144, 148 (Ark. App. 2019) ("a trust agreement is not a contract"); *In re Calomiris*, 894 A.2d 408, 410 (D.C. 2006) ("an inter vivos trust is not a contract" (internal quotation marks omitted)); *In re Will of Allis*, 6 Wis. 2d 1, 6 n.1, 94 N.W.2d 226 (1959) ("a testamentary trust is not a contract").

The proposition advanced by the plaintiff disregards several critical distinctions between a trust and a contract. As one court observed, "[t]rusts are distinguishable from contracts in that the parties to a contract may decide to exchange promises, but a trust does not rest on an exchange of promises and instead merely requires a trustor to transfer a beneficial interest in property to a trustee who, under the trust instrument, relevant statutes, and common law, holds that interest for the beneficiary. The undertaking between the settlor and trustee is not properly characterized as contractual and does not stem from the premise of mutual assent to an exchange of promises. Although the trustee's duties may derive from the trust instrument, they initially stem from the special nature of the relation between trustee and beneficiary, and thus, the trustee's undertakings or promises in a trust instrument are normally not contractual. A trust is also distinguishable from a contract in that a trust is a fiduciary relationship with respect to property. The relation ordinarily created by a contract is that of promisor and promisee, obligor and obligee, or debtor and creditor; in most contracts of hire, a special confidence is reposed in each other by the parties, but more than that is required to establish a fiduciary relation. An essential aspect of a trust is that the putative trustee has received property under conditions that impose a fiduciary duty to the grantor or a third person; a mere contractual obligation, including a contractual promise to convey property, does not create a trust. One of the major distinctions between a trust and contract is that in a trust, there is always a divided ownership of property, the trustee having usually a legal title and the beneficiary an equitable one, whereas in contract, this element of division of property interest is entirely lacking."[5] *Gibbons* v. *Anderson*, supra, 575 S.W.3d 149 n.3; see also G. Bogert, Trusts and Trustees (2020) § 17 ("[A] trust which is completely created needs no consideration to support it and make it enforceable . . . . Contracts are still dependent on consideration for their enforceability. This is a marked distinction between a trust and a contract." (Footnote omitted.)); 4 A. Scott et al., Scott and Ascher on Trusts (5th Ed. 2007) § 24.1.2, pp. 1657–58 ("[T]he fact that the trustee has expressly agreed to perform the trust

adds nothing to the trustee's duties or liabilities. The trustee is not liable in an action for breach of contract merely for having agreed to act as trustee.").

In light of the foregoing, we conclude as a matter of law that Sylvia, by agreeing to perform her duties as trustee, did not enter into a contract to perform the provisions of the trust that was enforceable by an action sounding in contract. For that reason, the court properly granted DiPreta's motion to strike count thirteen of the plaintiff's first amended complaint.

## III

The plaintiff also contends that the court improperly rejected his claim that his causes of action as a remainder beneficiary did not become ripe until the death of the primary beneficiary. He argues that the court "made a legal error in not finding [that] the [plaintiff's] action was triggered by the death of [Sylvia]." The plaintiff thus posits that the statute of limitations set forth in § 52-577 "did not begin to run until [her death] on July 24, 2015."[6] On our plenary review of that question of law; see *Pasco Common Condominium Assn., Inc.* v. *Benson*, 192 Conn. App. 479, 501, 218 A.3d 83 (2019); we disagree.

Section 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of *the act or omission complained of*." (Emphasis added.) As this court has observed, "[§] 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs." (Internal quotation marks omitted.) *Pagan* v. *Gonzalez*, 113 Conn. App. 135, 139, 965 A.2d 582 (2009). For that reason, "[w]hen conducting an analysis under § 52-577, *the only facts* material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Emphasis added; internal quotation marks omitted.) Id.

"Legal actions in Connecticut are commenced by service of process." (Internal quotation marks omitted.) *Rios* v. *CCMC Corp.*, 106 Conn. App. 810, 820, 943 A.2d 544 (2008). It is undisputed that service of process in the present case occurred on May 5, 2017. The wrongful conduct detailed in the operative complaint allegedly transpired from 1997 to 2013. Because the present action was not commenced until 2017, the tort counts alleged by the plaintiff fall outside the three year statutory period set forth in § 52-577.

Relying on a decision from a century ago, the plaintiff argues that those counts "did not become ripe" until Sylvia's death in 2015. The sole authority cited by the plaintiff for that novel contention is *State ex rel. McClure* v. *Northrop*, 93 Conn. 558, 569, 106 A. 504 (1919). *Northrop* did not involve an action against trust-

ees of a trust but, rather, a claim against sureties of a probate bond. Id., 562. The statute of limitations at issue in that case was *not* § 52-577—it was General Statutes § 6151, which governed actions "brought on contracts under seal . . . ." Id., 563. Moreover, in *Northrop*, the court stated that "[i]t is undoubted that the statute of limitation[s] begins to run as soon as the right of action has accrued. . . . But the right of action will not accrue until there is a person or persons capable of suing and being sued." (Citation omitted.) Id. In the present case, the plaintiff's causes of action against Sylvia all pertain to her conduct as a trustee. As a result, she was capable of being sued prior to the expiration of the three year limitation period of § 52-577, and the plaintiff has not argued otherwise in this appeal. In addition, we note that the limited discussion of remainder beneficiaries in *Northrop* pertained to whether they were subject to a defense of laches, and not their failure to file a tort claim within the statutory period of repose.[7] *Northrop* is, in a word, inapposite to the present case.

The plaintiff's contention that his causes of action did not become "ripe" until the death of Sylvia also contravenes the well established precedent of this state that § 52-577 operates as a bar to tort claims irrespective of when they accrue. As our Supreme Court has explained, "the history of [the] legislative choice of language [contained in § 52-577] precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 212, 541 A.2d 472 (1988); see also *Prokolkin* v. *General Motors Corp.*, 170 Conn. 289, 294–95, 365 A.2d 1180 (1976) (noting that legislature, in crafting § 52-577, "distinguished Connecticut's statutes of limitations for torts from those of other jurisdictions, the majority of which begin to run only after the cause of action has accrued" (internal quotation marks omitted)); *Sanborn* v. *Greenwald*, 39 Conn. App. 289, 302, 664 A.2d 803 (1995) ("[§] 52-577 is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action *before* it accrues" (emphasis added; internal quotation marks omitted)), cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995). This court is bound by that precedent.

Our law instructs that "[t]he date of the act or omission complained of" pursuant to § 52-577 is the date when the conduct of the defendant occurs. (Internal quotation marks omitted.) *Certain Underwriters at Lloyd's*, *London* v. *Cooperman*, 289 Conn. 383, 408, 957 A.2d 836 (2008). In his operative complaint, the plaintiff details specific conduct on the part of the defendants, none of which is alleged to have transpired after Sylvia's and Barbara's removal as cotrustees on June 11, 2013.[8] The dates alleged in the complaint are the relevant metric for purposes of applying the limitation period

of § 52-577. Because the conduct described therein is beyond that limitation period, the court properly concluded that the defendants satisfied their burden of demonstrating the applicability of § 52-577 to the plaintiff's tort claims.

IV

We next address the question of whether genuine issues of material fact exist as to the plaintiff's tolling claims. The plaintiff submits that § 52-577 was tolled in the present case by (1) the pendency of a final accounting in the Probate Court, (2) the continuing course of conduct doctrine, and (3) fraudulent concealment. We address each in turn.

We begin by noting the well established standard that governs our review of the trial court's decision to grant a motion for summary judgment. "The facts at issue are those alleged in the pleadings." (Internal quotation marks omitted.) *Parnoff* v. *Aquarion Water Co. of Connecticut*, 188 Conn. App. 153, 164, 204 A.3d 717 (2019). "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . [T]he moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 772–73, 176 A.3d 1 (2018).

As our Supreme Court has explained, "[i]n the context of a motion for summary judgment based on a statute of limitations special defense, a defendant typically meets its initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . When the plaintiff asserts that the [limitation] period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute. . . . The statutes of limitations applicable in the present case are occurrence statutes. . . . With such statutes, the [limitation] period typically begins to run as of the date

the complained of conduct occurs, and not the date when the plaintiff first discovers his injury. . . . In certain circumstances, however, we have recognized the applicability of the continuing course of conduct doctrine to toll a statute of limitations. Tolling does not enlarge the period in which to sue that is imposed by a statute of limitations, but it operates to suspend or interrupt its running while certain activity takes place." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Flannery* v. *Singer Asset Financial Co., LLC*, 312 Conn. 286, 310–11, 94 A.3d 553 (2014). With those principles in mind, we turn to the plaintiff's claims.

A

Pending Accounting in Probate Court

The plaintiff claims that the court "made a legal error" in concluding that the limitation period of § 52-577 commenced in 2013, because the Probate Court "has not yet approved [the] accountings" submitted by Sylvia and Barbara. We disagree.

In his principal appellate brief, the plaintiff relies on *State ex rel. McClure* v. *Northrop*, supra, 93 Conn. 558,[9] and a 1996 Superior Court decision to support his contention that the limitation period of § 52-577 does not begin to run until a final accounting has been approved in the Probate Court. His reliance is misplaced, as neither case involved the statute of limitations for tort claims. Rather, both involved actions against the surety on a probate bond, which are governed by General Statutes § 52-579.[10] Unlike § 52-577, application of the limitation period contained in § 52-579 expressly is conditioned on the approval of a final accounting by the Probate Court.[11]

In this case, there is no allegation or evidence of the existence of a probate bond. The operative complaint contains no claim against the surety of a probate bond. Section 52-579 and its requirements thus have no bearing on the present case.

Although the plaintiff concedes that he "is not suing on a surety bond," he nonetheless argues that the analysis under §§ 52-577 and 52-579 "is the same." We do not agree. As we observed in part III of this opinion, "[w]hen conducting an analysis under § 52-577, *the only facts* material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Emphasis added; internal quotation marks omitted.) *Pagan* v. *Gonzalez*, supra, 113 Conn. App. 139. Moreover, the plaintiff has provided this court with no authority, nor are we aware of any, in which a court has held that the limitation period of § 52-577 automatically is tolled for any and all tort claims against a trustee due to the pendency of a final accounting in the Probate Court, and we are not inclined to articulate such a per

se rule here.[12] Rather, we believe that the accounting issue raised by the plaintiff in this appeal, which implicates the fiduciary duty of a removed trustee, properly falls within the purview of the continuous course of conduct doctrine.

### B

### Continuing Course of Conduct

The continuing course of conduct doctrine operates to delay the commencement of the running of an otherwise applicable statute of limitations. See, e.g., *Handler* v. *Remington Arms Co.*, 144 Conn. 316, 321, 130 A.2d 793 (1957) ("[w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed"). "When presented with a motion for summary judgment under the continuous course of conduct doctrine, [the court] must determine whether there is a genuine issue of material fact with respect to whether the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." (Internal quotation marks omitted.) *Martinelli* v. *Fusi*, supra, 290 Conn. 357; see also *Vaccaro* v. *Shell Beach Condominium, Inc.*, 169 Conn. App. 21, 45, 148 A.3d 1123 (2016) ("[i]f there is no genuine issue of material fact with respect to any one of the three prongs [of the continuous course of conduct test] summary judgment is appropriate" (internal quotation marks omitted)), cert. denied, 324 Conn. 917, 154 A.3d 1008 (2017). "Although the question of whether a party's claim is barred by the statute of limitations is a question of law, the issue of whether a party engaged in a continuing course of conduct that tolled the running of the statute of limitations is a mixed question of law and fact." (Internal quotation marks omitted.) *Straw Pond Associates, LLC* v. *Fitzpatrick, Mariano & Santos, P.C.*, 167 Conn. App. 691, 715, 145 A.3d 292, cert. denied, 323 Conn. 930, 150 A.3d 231 (2016).

### 1

### Roberta

We begin with the plaintiff's counts against Roberta, which sound in conversion, civil theft, and fraudulent misrepresentation. Nowhere in the operative complaint or his reply to the statute of limitations special defense does the plaintiff allege that Roberta owed a legal duty to him. Unlike Sylvia and Barbara, Roberta never was a trustee and did not stand in a fiduciary relation to him. The plaintiff's claims pertain to her activities as a bookkeeper who allegedly provided assistance to Sylvia and Barbara during their tenure as trustees.[13] Moreover, the plaintiff has not offered affidavits or other proof indicating that Roberta engaged in any activity with respect to the trust after June 11, 2013. Indeed, the plaintiff alleges in count three of his operative com-

plaint, which sets forth a conversion claim against Roberta, that, "[a]s a result of [Roberta's] misconduct from 1997 through 2013, the plaintiff has suffered money damages." For that reason, the court properly concluded that the continuing course of conduct doctrine did not apply to the plaintiff's claims against Roberta.

## 2

### Sylvia

#### a

The continuing course of conduct doctrine often is implicated when a fiduciary relationship exists between the parties. See, e.g., *Essex Ins. Co.* v. *William Kramer & Associates, LLC*, 331 Conn. 493, 506–507, 205 A.3d 534 (2019) (continuing course of conduct doctrine implicated by fiduciary relationship); *Flannery* v. *Singer Asset Financial Co., LLC*, supra, 312 Conn. 304–305 (concluding that Appellate Court improperly declined to reach merits of plaintiff's "continuing course of conduct claims in avoidance of the defendant's statute of limitations defenses" because plaintiff had alleged breach of fiduciary duty); *Carson* v. *Allianz Life Ins. Co. of North America*, 184 Conn. App. 318, 332, 194 A.3d 1214 (2018) (concluding that continuing course of conduct doctrine did not apply to toll § 52-577 because no genuine issue of material fact existed "as to whether the defendant had a fiduciary duty to the plaintiff"), cert. denied, 331 Conn. 924, 207 A.3d 27 (2019). Unlike Roberta, Sylvia served as a trustee from 1993 to June 11, 2013. She thus owed a fiduciary duty to the plaintiff as a remainder beneficiary of the trust. See *Ramondetta* v. *Amenta*, 97 Conn. App. 151, 157 n.4, 903 A.2d 232 (2006) (trustee accountable to beneficiary for breach of fiduciary duties); 3 Restatement (Third), Trusts § 70, p. 6 (2007) (trustee owes fiduciary duty to beneficiary). That fiduciary duty includes the duty to provide an accounting to trust beneficiaries.[14] See *Phillips* v. *Moeller*, 148 Conn. 361, 371, 170 A.2d 897 (1961) (trustee has duty "to keep clear and accurate accounts, and in his reports he should . . . keep beneficiaries informed concerning the management of the trust"); *Dettenborn* v. *Hartford-National Bank & Trust Co.*, 121 Conn. 388, 391, 185 A. 82 (1936) (requirement that trustee file final accounting "is implicit in the statutory provisions governing the matter"); 3 A. Scott et al., supra, § 17.5, pp. 1196–97 ("The trustee is under a duty to give the beneficiaries . . . complete and accurate information as to the administration of the trust . . . . The beneficiaries are entitled to know what the trust property is and how the trustee has dealt with it.").

More complicated is the question of precisely when Sylvia's fiduciary duty to the plaintiff expired. Though numerous are the decisions involving the duty of a trustee upon termination of a trust, there is scant

authority regarding the duty of a trustee who has been removed.[15] A brief review of the trustee's duty upon termination of a trust, therefore, is warranted.

When a trust is terminated, a trustee is obligated under Connecticut law to render a final accounting. See General Statutes § 45a-175 (a) (vesting Probate Court with "jurisdiction of the . . . final accounts" of trustees); General Statutes § 45a-177 (a) (requiring trustees to file "periodic accounts of their trusts" as well as "a final account"); cf. *Dettenborn* v. *Hartford-National Bank & Trust Co.*, supra, 121 Conn. 391 (requirement that trustee file final accounting "is implicit in the statutory provisions governing the matter"). That precept is well recognized throughout the United States. See, e.g., *Brine* v. *Paine, Webber, Jackson & Curtis, Inc.*, 745 F.2d 100, 104 (1st Cir. 1984) ("[o]nce a trust is terminated, the trustee has the continuing power and obligation only to preserve the trust property while winding up the trust and to deliver any remaining trust property to the beneficiary"); *In re Estate of Moring* v. *Colorado Dept. of Health Care Policy & Financing*, 24 P.3d 642, 647 (Colo. App. 2001) ("it is the duty of the trustee to make a final accounting"); *Duncan* v. *Dow*, 95 N.H. 5, 10, 57 A.2d 417 (1948) ("[f]inal accounts should . . . be filed at the expiration of a trust and whenever a trustee severs his connection by reason of resignation, removal or otherwise"); *In re Cary's Estate*, 81 Vt. 112, 120, 69 A. 736 (1908) (at expiration of trust "it was then the duty of the trustee . . . to render a full and final account of his trust to the probate court, and on settlement thereof to turn over the trust fund to the remaindermen"); *Klein* v. *Estate of Klein*, Docket No. 54192-7-I, 2005 WL 3105580, *5 (Wn. App. November 21, 2005) ("testamentary trusts do not terminate until a final accounting by the trustee and the end of the trust, and a trustee is not discharged from his duties until all of the property in the trust is accounted for and distributed") (decision without published opinion, 130 Wn. App. 1029 (2005)); *Matter of Sensenbrenner*, 76 Wis. 2d 625, 634, 252 N.W.2d 47 (1977) ("[T]he law is clear that upon the event terminating a trust, the trustees must use due care and diligence to distribute the trust assets. The distribution must be accomplished as soon as it is reasonably possible to do so.); accord 2 Restatement (Second), supra, § 345, p. 193 ("[u]pon the termination of the trust it is the duty of the trustee to the person beneficially entitled to the trust property to transfer the property to him"); id., comment (e), p. 195 ("[i]t is the duty of the trustee . . . to make his final accounting with reasonable promptness"); 5 A. Scott et al., supra, § 36.1, pp. 2321–23 (trustee's duties continue until final accounting rendered and trust assets distributed).

Significantly, a trustee's fiduciary duty does not immediately end upon termination of a trust. As this court explained in *Ramondetta* v. *Amenta*, supra, 97 Conn. App. 157–58, "the fiduciary duty of a trustee does

not immediately terminate when the trust property ceases to exist. Rather, the trustee's fiduciary duty survives even the termination of the trust." (Footnote omitted.) Accord 1A A. Scott & W. Fratcher, Scott on Trusts (4th Ed. 1987) § 74.2, p. 435 (trustee still under duty to account to beneficiary and still owes fiduciary duties as "fiduciary relation continues, although it ceases to be a relation with respect to any specific property"); 2 Restatement (Second), supra, § 344, p. 190 ("[w]hen the time for the termination of the trust has arrived, the trustee has such powers and duties as are appropriate for the winding up of the trust").

That maxim applies with equal force to trustees who resign their position. As the Restatement (Third) of Trusts notes, "[r]esignation does not relieve the trustee from liability for breaches of trust committed prior to the time the resignation becomes effective. Normally the trustee has a duty to account to the beneficiaries, and this accounting may have the effect of determining any liability of the resigning trustee and of relieving the trustee of other liability. . . . The trustee also has a duty to administer and preserve the trust property until a successor is properly appointed and assumes the duties of the trusteeship." (Citations omitted.) 2 Restatement (Third), Trusts, § 36, comment (d), p. 130 (2003); see also 2 A. Scott et al., supra, § 11.9.3, p. 653 ("[g]enerally, the court does not permit a trustee to resign until a successor has been appointed, title to the trust property has been transferred to the successor trustee, and the trustee has accounted"). Connecticut law likewise provides that "resignation shall not relieve [a] fiduciary from the obligation to fully and finally account to the court for the administration of such fiduciary's trust." General Statutes § 45a-242 (b).

We see no good reason why the principles that govern the duties of a trustee upon either resignation or the termination of the trust should not also apply to a trustee that is removed by order of the Probate Court. In each instance, the trustee's tenure has come to a close; in each, the trustee is in a paramount position to survey the assets of the estate and report thereon. The need for a proper accounting arguably is at its zenith when a trustee is removed, as removal is an extraordinary measure. See, e.g., *Cadle Co*. v. *D'Addario*, 268 Conn. 441, 458, 844 A.2d 836 (2003) ("The power of removal of trustees . . . ought to be exercised sparingly by the courts. There must be a clear necessity for interference to save the trust property." (Internal quotation marks omitted.)); *Phillips* v. *Moeller*, supra, 148 Conn. 369 ("[i]n no case ought the trustee to be removed where there is no danger of a breach of trust" (internal quotation marks omitted)); *Matter of Joan Moran Trust*, 166 App. Div. 3d 1176, 1179, 88 N.Y.S.3d 590 (2018) ("[r]emoval of a trustee . . . is a drastic action, and courts are generally hesitant to exercise the power to remove a fiduciary absent a clear necessity").

Logic dictates that the fiduciary duty of an outgoing trustee to account for trust assets and to surrender those assets to the successor trustee continues for some period of time beyond the date of removal.

In light of the foregoing, we disagree with DiPreta's contention that Sylvia's fiduciary duty to the plaintiff immediately ceased upon her removal as a trustee on June 11, 2013. We also note that, when it removed Sylvia as a trustee on June 11, 2013, the Probate Court ordered her "to file an account for the period from January 1, 2010, to the present."[16] We therefore conclude that the plaintiff has met his burden of establishing the second prong of the continuing course of conduct test. On the record before us, we conclude that Sylvia owed a continuing fiduciary duty to account for trust assets following her removal as a trustee on June 11, 2013.

b

We therefore turn our attention to the third prong of the continuous course of conduct test, which requires "evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto." (Internal quotation marks omitted.) *Watts* v. *Chittenden,* 301 Conn. 575, 585, 22 A.3d 1214 (2011). With respect to "what constitutes a continuing violation of a breach" under that third prong; *Saint Bernard School of Montville, Inc.* v. *Bank of America,* 312 Conn. 811, 838, 95 A.3d 1063 (2014); our Supreme Court has stated: "[T]he continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. . . . In between the case in which a single event gives rise to continuing injuries and the case in which a continuous series of events gives rise to a cumulative injury is the case in which repeated events give rise to discrete injuries . . . . [In such a case] the damages from each discrete act . . . would be readily calculable without waiting for the entire series of acts to end. There would be no excuse for the delay. And so the violation would not be deemed continuing." (Citation omitted; internal quotation marks omitted.) Id., 837–38. As applied to the present case, the question is whether the plaintiff has presented an evidentiary basis to establish a genuine issue of material fact as to whether Sylvia and the estate continually breached the fiduciary duty to account for trust assets following her removal as a trustee in 2013.

The following facts are relevant to our analysis. In his operative complaint, the plaintiff alleged that Sylvia breached her fiduciary duty by failing to properly account for certain expenditures and transactions involving trust assets during her tenure as a trustee.[17] DiPreta filed an answer on March 16, 2018, in which he denied the substance of those allegations. In that pleading, DiPreta also raised a statute of limitations

special defense pursuant to § 52-577, alleging in relevant part that Sylvia "no longer had access to or control of the [t]rust after June 11, 2013," and that her "purported continuous conduct, which is expressly denied, ended on June 11, 2013," when she was removed as a trustee.

On June 25, 2018, the plaintiff filed a reply to that special defense. With respect to the continuing course of conduct, the plaintiff alleged that Sylvia continued to breach her fiduciary duty as follows: "[Sylvia has failed] to turn over two automobiles and automotive parts to the [successor trustee]. [Sylvia has] also failed to return admittedly inappropriately taken funds from the [t]rust. In addition, [Sylvia has] failed and/or refused to turn over documents and records required to be kept under Probate Court Rule 36.13."

In that reply, the plaintiff also acknowledged that DiPreta had, in fact, filed an accounting with the Probate Court subsequent to Sylvia's removal as a trustee.[18] The Probate Court thereafter ordered, with the consent of "all interested parties," that "a forensic accountant be retained to conduct an accounting of all trust finances from the period of 1997 to September 11, 2013." At no time has the plaintiff alleged a failure on the part of Sylvia or DiPreta to comply with that forensic accounting.

Although the plaintiff commenced this action after DiPreta filed that accounting, the plaintiff's pleadings contain no specific allegations of a continuing breach of a fiduciary duty subsequent to Sylvia's removal as a trustee, save for the issue of antique automobiles and parts. The plaintiff has not identified, never mind offered proof of, the "admittedly inappropriately taken funds" or the "documents and records" referenced in his reply. The record before us contains no admission by Sylvia or DiPreta that any trust funds were inappropriately taken by Sylvia. Moreover, the plaintiff offered no further explication of those generalized accusations in his memorandum of law in opposition to the motions for summary judgment.

In that memorandum of law, the plaintiff confuses the relevant time period for purposes of the continuing course of conduct analysis, arguing that "[a]ll of the alleged misdeeds, breaches, and all illegal actions occurred after" the Probate Court entered an order in 2004, in which the court (1) removed the plaintiff as a cotrustee and (2) indicated that Sylvia and Barbara would be removed as trustees following the sale of the antique automobiles. It nonetheless remains that the Probate Court did *not* remove Sylvia and Barbara as trustees until nine years later in 2013. In applying the third prong of the continuing course of conduct doctrine to the present case, the relevant inquiry is not whether Sylvia breached her fiduciary duty to the plaintiff prior to her removal as a trustee, as those initial breaches occurred beyond the time limitation of § 52-577. Rather,

the critical inquiry under the third prong asks whether Sylvia committed a subsequent breach of a continuing fiduciary duty following her removal as a trustee that would operate to toll that statute of repose.

"The facts at issue are those alleged in the pleadings." (Internal quotation marks omitted.) *Parnoff* v. *Aquarion Water Co. of Connecticut*, supra, 188 Conn. App. 164; see also *U.S. Bank National Assn.* v. *Eichten*, 184 Conn. App. 727, 745, 196 A.3d 328 (2018) ("The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . [T]he applicable rule regarding the material facts to be considered on a motion for summary judgment is that the facts at issue are those alleged in the pleadings." (Internal quotation marks omitted.)). The only factual allegations in the plaintiff's pleadings of a continuing breach of the fiduciary duty owed to remainder beneficiaries that occurred subsequent to Sylvia's removal as a trustee concern the failure to account for certain automobiles and parts. As a result, any other infirmities in the accounting provided by DiPreta are immaterial to the present dispute.[19] See *Nutmeg Housing Development Corp.* v. *Colchester*, 324 Conn. 1, 14 n.4, 151 A.3d 358 (2016) ("[f]acts . . . not averred [in the plaintiff's pleadings] cannot be made the basis for a recovery" (internal quotation marks omitted)); *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 621, 99 A.3d 1079 (2014) ("The principle that a plaintiff may rely only [on] what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations [in the pleadings]." (Internal quotation marks omitted.)); *Straw Pond Associates, LLC* v. *Fitzpatrick, Mariano & Santos, P.C.*, supra, 167 Conn. App. 728 ("[a] genuine issue of material fact must be one which the party opposing the motion is entitled to litigate under his pleadings and the mere existence of a factual dispute apart from the pleadings is not enough to preclude summary judgment" (emphasis omitted; internal quotation marks omitted)).

Accordingly, we turn our attention to the plaintiff's claim that Sylvia and DiPreta continued to breach the fiduciary duty owed to remainder beneficiaries by failing to account for two antique automobiles and automobile parts that were assets of the trust.[20] In opposing DiPreta's motion for summary judgment, the plaintiff submitted a copy of an accounting inventory of the trust dated July 11, 2002, at which time the plaintiff, Sylvia, and Barbara served as cotrustees. In a section captioned "Miscellaneous Assets," that inventory listed various automobiles, including a 1928 Model A and a 1948 MG-TC.[21] The cover sheet to that 2002 inventory contains a prefatory note, which states: "This account has been prepared on behalf of two of the trustees, [Sylvia] and [Barbara]. The remaining trustee, [the plaintiff], prepared the inventory of the automobiles con-

tained in the account. [Sylvia] and [Barbara] have reason to believe that at least one of the automobiles belonging to the trust has been omitted from that inventory. Furthermore, certain of the automobiles have been in the sole possession and control of [the plaintiff] during the period of the accounting, and [Sylvia] and [Barbara] have been denied access to these vehicles. Accordingly, [Sylvia] and [Barbara] make no representations concerning these vehicles and disclaim any responsibility for the accuracy of the information contained herein relating to automobiles." Although the 2002 inventory includes various items described as "Miscellaneous Assets," it contains no reference to automobile parts.

When the plaintiff was removed as a trustee in 2004, the Probate Court ordered the cotrustees, including Sylvia, to arrange for the sale of the antique automobiles that belonged to the trust.[22] In count two of the operative complaint, the plaintiff alleged in relevant part that Sylvia breached her fiduciary duty by failing to "safeguard and provide an accounting of [t]rust cars, 1928 Model A Roadster and 1948 MG-TC, resulting in the loss of . . . valuable [t]rust assets . . . ." The plaintiff also alleged that Sylvia breached her fiduciary duty "[b]y selling [t]rust antique car parts and memorabilia without . . . accounting for the proceeds from such sales . . . ."

In response to the statute of limitations special defense raised by the defendants, the plaintiff alleged that Sylvia engaged in a continuous course of conduct by failing to account for the automobiles and parts in question. The court rejected that claim and concluded that the continuing course of conduct doctrine did not apply. We agree with that determination.

Contrary to the plaintiff's contention, the failure to account for the two antique automobiles and unspecified automobile parts does not constitute a continuous series of events that give rise to a cumulative injury. See *Watts* v. *Chittenden*, supra, 301 Conn. 592. The subsequent injury allegedly sustained by the plaintiff following Sylvia's removal as trustee is the very same injury that the plaintiff incurred prior to her removal— the failure to obtain an accounting of the automobile assets in question. As our Supreme Court has explained, when the continuous course of conduct doctrine is implicated, "each incident *increases* the plaintiff's injury . . . ." (Emphasis added; internal quotation marks omitted.) Id., 588. This court likewise has observed that, in cases in which the doctrine applies, the injury to the plaintiff "was perpetuated [and] enhanced" by the subsequent breach of a continuing duty. *Sanborn* v. *Greenwald*, supra, 39 Conn. App. 296. No such increase or enhancement to the plaintiff's injury is present in this case.

This also is not a case in which the "specific tortious

acts or omissions" are difficult to identify. (Internal quotation marks omitted.) *Martinelli* v. *Fusi*, supra, 290 Conn. 356. The issue of the antique automobile assets long has been the subject of dispute between the parties, and on which the Probate Court entered a specific order in 2004, almost one decade prior to Sylvia's removal as a trustee. This case also is not one in which "the situation keeps evolving after the act complained of is complete, such as medical malpractice . . . ."[23] *Sanborn* v. *Greenwald*, supra, 39 Conn. App. 298; see also *Macellaio* v. *Newington Police Dept.*, 145 Conn. App. 426, 436, 75 A.3d 78 (2013) (continuing course of conduct doctrine did not apply when plaintiff failed to establish that "the alleged violation continued to evolve" after initial wrong committed). The initial breach of Sylvia's fiduciary duty and the subsequent breach of that duty following her removal as trustee are one and the same—the failure to account for two antique automobiles and unspecified automobile parts. To paraphrase this court's observation in *Vaccaro* v. *Shell Beach Condominium, Inc.*, supra, 169 Conn. App. 55, all of the injuries alleged by the plaintiff arise from Sylvia's failure to account for those assets at the time that she was removed as a trustee in 2013, and the plaintiff has identified no separate injuries that have arisen as a result of any ongoing failure by Sylvia and DiPreta to account for those assets.

Construing the pleadings and the materials before us in the light most favorable to the nonmoving party; see, e.g., *NetScout Systems, Inc.* v. *Gartner, Inc.*, 334 Conn. 396, 408–409, 223 A.3d 37 (2020); we conclude that the plaintiff has not established the existence of a genuine issue of material fact as to whether Sylvia and DiPreta committed a continuous breach of the fiduciary duty owed to remainder beneficiaries that resulted in an enhanced injury to him. Accordingly, the court properly determined that this case did not warrant application of the continuing course of conduct doctrine.

B

Fraudulent Concealment

The plaintiff also claims that a genuine issue of material fact exists as to whether Sylvia, DiPreta, and Roberta fraudulently concealed the plaintiff's causes of action against them, such that the statute of limitations was tolled by the application of General Statutes § 52-595. We disagree.

1

As a preliminary matter, we address a burden-shifting argument raised by the plaintiff with respect to this claim. It is well established that, when a defendant, in moving for summary judgment on the basis of a statute of limitations special defense, demonstrates that the action was commenced outside of the statutory limitation period, "the burden normally shifts to the plaintiff

to establish" a disputed issue of material fact on its claim "that the [limitation] period has been tolled by an equitable exception . . . ." (Internal quotation marks omitted.) *Flannery* v. *Singer Asset Financial Co., LLC*, supra, 312 Conn. 310; see also *Bound Brook Assn.* v. *Norwalk*, 198 Conn. 660, 665, 504 A.2d 1047 ("[t]o establish that the defendants had fraudulently concealed the existence of their cause of action and so had tolled the statute of limitations, the plaintiffs had the burden" of proof), cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986). Relying on *Martinelli* v. *Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 421 (2d Cir. 1999),[24] the plaintiff argues that, because the present case involves a fiduciary relationship between the parties, the burden should instead rest with the defendants to demonstrate that they did not engage in fraudulent concealment.

The plaintiff overlooks the fact that our Supreme Court has not adopted the burden-shifting framework articulated in *Martinelli* in the two decades since it was decided. In *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 912 A.2d 1019 (2007), a fraudulent concealment defense was raised in a case in which a fiduciary relationship between the parties was alleged. Our Supreme Court nonetheless held that the burden of establishing fraudulent concealment belonged to the party seeking to avail itself of that tolling doctrine. Id., 105. This court has adhered to that precedent in the years since, even when a fiduciary relationship is alleged. See, e.g., *Carson* v. *Allianz Life Ins. Co. of North America*, supra, 184 Conn. App. 326–28; cf. *Hodges* v. *Glenholme School*, United States District Court, Docket No. 3:15-cv-1161 (SRU) (D. Conn. September 13, 2016) ("that burden-shifting approach [articulated in *Martinelli*] has not been adopted by Connecticut courts"), aff'd, 713 Fed. Appx. 49 (2d Cir. 2017). Moreover, in *Iacurci* v. *Sax*, 313 Conn. 786, 793 n.9, 99 A.3d 1145 (2014), our Supreme Court declined to address "a potentially shifting burden of proof in [fraudulent concealment] cases" in accordance with *Martinelli*.

As an intermediate appellate tribunal, this court is not at liberty to modify, reconsider, or overrule the precedent of our Supreme Court. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 48–49, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010), and case law cited therein. Whether to alter the applicable legal standard governing fraudulent concealment claims remains the prerogative of this state's highest court. See, e.g., *Verrillo* v. *Zoning Board of Appeals*, 155 Conn. App. 657, 715, 111 A.3d 473 (2015) ("if the well established hardship standard is to be modified, such modification is the prerogative of our Supreme Court"). We therefore decline the plaintiff's invitation to revisit that legal standard.

The plaintiff's tolling defense is predicated on § 52-595, our fraudulent concealment statute.[25] To toll a statute of limitations thereunder, "a plaintiff must present evidence that a defendant: (1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the [plaintiff's] cause of action; (2) intentionally concealed these facts from the [plaintiff]; and (3) concealed the facts for the purpose of obtaining delay on the [plaintiff's] part in filing a complaint on their cause of action." (Internal quotation marks omitted.) *Iacurci* v. *Sax*, supra, 313 Conn. 799–800. Our Supreme Court further has explained that, "[t]o meet this burden, it [is] not sufficient for the plaintiffs to prove merely that it [is] more likely than not that the defendants had concealed the cause of action. Instead, the plaintiffs [must] prove fraudulent concealment by the more exacting standard of clear, precise, and unequivocal evidence." (Internal quotation marks omitted.) *Bartone* v. *Robert L. Day Co.*, 232 Conn. 527, 533, 656 A.2d 221 (1995).

In rendering summary judgment in favor of Roberta and DiPreta, the court noted that it had "carefully reviewed all of the correspondence, pleadings, rulings, account statements, affidavits and deposition transcripts submitted by the plaintiff in opposition to the defendants' motions. The motions filed in the Probate Court action (and the defendants' opposition to them) establish that the parties' litigation in the Probate Court has been highly contested. They do not, even when viewed in the light most favorable to the plaintiff, show any intent on the part of the defendants to conceal facts or support a finding that the defendants' alleged concealment was in any way directed toward delaying commencement of an action against them." On our review of the record before us, we concur with that determination. As this court noted in *Macellaio* v. *Newington Police Dept.*, supra, 145 Conn. App. 434, a plaintiff's "bare assertions" do not suffice "to establish [a] factual predicate" for a fraudulent concealment defense; evidence is required. In the present case, the plaintiff has not provided clear and unequivocal evidence that either Sylvia, DiPreta, or Roberta had actual awareness of the facts necessary to establish the plaintiff's causes of action or that they intentionally concealed such facts from him. For that reason, the court properly concluded that no genuine issue of material fact existed with respect to his fraudulent concealment claim.

## V

The plaintiff also claims that the court improperly denied his motion to open the judgment. In that motion, the plaintiff claimed that newly discovered evidence warranted the opening of the summary judgment ren-

dered in favor of the defendants. Specifically, he claimed that testimony from DiPreta during a November, 2018 Superior Court proceeding regarding an award of attorney's fees for work performed by DiPreta subsequent to Sylvia's removal as a trustee directly contravened DiPreta's contention that Sylvia had no continuing duty to the remainder beneficiaries following her removal as a trustee on June 11, 2013. According to the plaintiff, the judgment must be opened to permit him to present that evidence in support of his claim that Sylvia possessed a fiduciary duty that continued beyond June 11, 2013.[26]

We conclude that the plaintiff's appeal in this regard is moot. "When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *State* v. *Nalewajk*, 190 Conn. App. 462, 464–65, 211 A.3d 122 (2019). In part IV (B) (2) (a) of this opinion, we determined that Sylvia owed a continuing fiduciary duty to the remainder beneficiaries to account for trust assets following her removal as a trustee on June 11, 2013. Accordingly, no practical relief can be afforded to the plaintiff. Simply put, the relief the plaintiff is requesting is an opportunity to submit further evidence that ostensibly supports a legal conclusion already rendered by this court today. We, therefore, dismiss that portion of the plaintiff's appeal challenging the propriety of the denial of his motion to open the judgment.

The appeal is dismissed only as to the portions challenging the partial summary judgment rendered in favor of Barbara and the denial of the plaintiff's motion to open the judgment; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] In his complaint, the plaintiff named as defendants his two sisters, Barbara Tunick and Roberta Tunick, and Richard DiPreta, administrator of the estate of the plaintiff's mother, Sylvia Tunick, who died in 2015. For clarity, we refer to them collectively as the defendants, and to Barbara Tunick, Roberta Tunick, and Sylvia Tunick individually by their first names.

We note that the plaintiff properly named DiPreta as a party to this action in his capacity as the administrator of Sylvia's estate. But cf. *American Tax Funding, LLC* v. *Design Land Developers of Newtown, Inc.*, 200 Conn. App. 837, 845–48,      A.3d      (2020) (trial court lacked jurisdiction to render judgment against estate, which is not legal entity, where complaint named estate as defendant rather than executors of estate as parties in their representative capacities). We also note that, after commencing this litigation, the plaintiff subsequently moved to cite in Richard J. Margenot, successor trustee of the David H. Tunick revocable trust, as a plaintiff, which motion the court granted. Margenot has not participated in this appeal.

[2] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[3] On August 15, 2019, the plaintiff requested permission to file a late amended appeal for the purpose of challenging the propriety of the denial of his motion to open the judgment, which this court granted. The plaintiff thereafter filed this amended appeal.

[4] We reiterate that the plaintiff's operative complaint contained five counts against Barbara. Count one alleged breach of fiduciary duty; count four alleged conversion; count six alleged civil theft; count nine alleged "misrepresentation/fraud"; and count twelve alleged breach of contract against her. Appellate review of the partial summary judgment rendered in favor of Barbara on those counts must await resolution of the remaining unjust enrichment count that the plaintiff has alleged against her. See *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 262 Conn. 240, 246–47, 811 A.2d 1272 (2002).

[5] In a similar action, the Rhode Island Supreme Court recently declined "the invitation to blur the distinction between gifting to a beneficiary directly and doing so through a trust instrument." *Glassie* v. *Doucette*, 157 A.3d 1092, 1099 (R.I. 2017). The appellant in that case was the executrix of the estate of a third-party beneficiary under a property settlement agreement entered into by her parents at the time that their marriage was dissolved, which required the appellant's father to create and fund a trust for her benefit. Id., 1094. Although it was undisputed that the father created and partially funded such a trust, the appellant brought an action sounding in breach of contract due to the father's alleged failure to fully fund the trust. Id., 1094–95. The trial court concluded that the appellant lacked standing to maintain that action and, on appeal, the Rhode Island Supreme Court framed the issue as "whether the law of contracts or the law of trusts [governed] the resolution of this dispute." Id., 1094. The court held that "once the [t]rust was created, the law of trusts became the governing law. From that point forward, [the appellant's] status was that of a trust beneficiary, not of a third-party beneficiary to a contract. Accordingly, [the appellant] lacked the requisite standing to [maintain an action sounding in contract against] her father's estate for benefits she would have received based on her status as the beneficiary of the [t]rust." Id., 1100.

[6] In this appeal, the plaintiff does not dispute that § 52-577 governs tort claims brought by a beneficiary against a trustee. See generally 4 Restatement (Third), Trusts § 98, p. 48 (2012) ("[a] beneficiary may not maintain a suit against a trustee for breach of trust if the beneficiary is barred from doing so . . . by a statutory period of limitation"); 4 A. Scott et al., supra, § 23.24.2, p. 1785 ("[i]n actions at law . . . courts simply applied the relevant statute of limitations"); see also *Cone* v. *Dunham*, 59 Conn. 145, 158, 20 A. 311 (1890) ("[t]o exempt a trust from the bar of the statute of limitations . . . it must be of the kind belonging *exclusively* to the jurisdiction of a court of equity" (emphasis added; internal quotation marks omitted)).

[7] As the court stated: "No obligation rested upon the [remainder beneficiaries] of this trust fund to protect the sureties on this bond against the act of the principal, prior to the death of the last life tenant . . . on February 26th, 1913. Until then the [remainder beneficiaries] could not be known; and in the absence of fraud on their part prejudicial to the sureties, they cannot be held in any degree responsible for the acts or omissions of this testamentary trustee. . . . Nor can [they] be held responsible for the acts or omissions of the life tenants. [Remainder beneficiaries] and life tenants are not in privity. There is thus no possible basis for a claim of laches on the part of these [remainder beneficiaries] . . . until after the decease of the life tenant, for their right to enforce a final distribution began then. Before that time a charge of laches on their part could not be sustained." (Citation omitted.) *State ex rel. McClure* v. *Northrop*, supra, 93 Conn. 564–65.

[8] As the court noted in its memorandum of decision, "[t]he plaintiff alleges numerous wrongful actions by the defendants on behalf of the trust but does not specify in every instance when these actions and failures to act occurred." Significantly, the operative complaint lacks any allegations of wrongful conduct on the part of the defendants that transpired after June 11, 2013. For example, in paragraph 15 of the breach of fiduciary count against Sylvia, the plaintiff sets forth a litany of alleged transgressions, for which the plaintiff has alleged either (1) a specific date prior to June 11, 2013, or (2) no date whatsoever. Paragraph 18 of that count then alleges that Sylvia "breached her fiduciary duty . . . by wrongfully causing funds to be spent against the will and intent of the [trust] *from 1997 through 2013, as stated in paragraph 15 above.*" (Emphasis added.) Paragraph 13 of the conversion count against Roberta similarly alleges that, "[a]s a result of [Roberta's] misconduct from 1997 through 2013, the plaintiff has suffered money damages."

[9] In *Northrop*, our Supreme Court held that "the statute of limitation[s] cannot run against [the trust beneficiaries] . . . until his trusteeship is terminated . . . ." *State ex rel. McClure* v. *Northrop*, supra, 93 Conn. 563. It is undisputed that Sylvia's trusteeship was terminated on June 11, 2013, more than three years prior to the commencement of this action.

[10] In *Northrop*, the plaintiff commenced an action "to hold the principal and [the] surety . . . upon a probate bond . . . ." *State ex rel. McClure* v. *Northrop*, supra, 93 Conn. 562. As the Supreme Court noted in its decision, "[t]he sureties [abandoned] the claim that this action is barred by the statute limiting actions against sureties on probate bonds to those brought within six years from the final settlement and acceptance of the account of the principal. General [Statutes (1918 Rev.) § 6156] [the statutory precursor to § 52-579]." *State ex rel. McClure* v. *Northrop*, supra, 564.

In *Lindberg* v. *Godbout*, Superior Court, judicial district of New Britain, Docket No. CV-95-0466626-S (May 14, 1996) (17 Conn. L. Rptr. 123, 124), the plaintiff sought recovery on a probate bond "from the former [estate] administrator and the bondholder." Because "no final accounting [had] been approved," the court concluded that "the plaintiff's cause of action is timely" under § 52-579.

[11] General Statutes § 52-579 provides: "No action shall be maintained against the surety on any probate bond unless brought within six years from the final settlement of account of the principal in such bond and the acceptance of such account by the Court of Probate; but this provision shall not apply to minors who are parties in interest."

[12] Whether to amend § 52-577 with respect to accountings pending before the Probate Court remains the exclusive prerogative of the legislature. See, e.g., *Genesky* v. *East Lyme*, 275 Conn. 246, 268, 881 A.2d 114 (2005) (Connecticut courts cannot read into legislation provisions that clearly are not contained therein); *Glastonbury Co.* v. *Gillies*, 209 Conn. 175, 181, 550 A.2d 8 (1988) ("[I]t is not the province of a court to supply what the legislature chose to omit. The legislature is supreme in the area of legislation, and courts must apply statutory enactments according to their plain terms." (Internal quotation marks omitted.)).

[13] In her March 16, 2015 deposition testimony, portions of which the plaintiff submitted as an exhibit in his opposition to the motions for summary judgment, Barbara stated that "[m]y sister [Roberta] did the bookkeeping" for the trust. Roberta similarly testified at her February 27, 2015 deposition, which also was submitted as an exhibit, that she provided assistance to Sylvia by writing checks on behalf of the trust from 2005 until June 1, 2013.

[14] Apart from the duty to account for the assets of the trust, the plaintiff has not identified any legal duty that allegedly continued following Sylvia's removal as a trustee in 2013. We therefore confine our analysis to the allegations in the operative complaint concerning Sylvia's fiduciary duty to account for trust assets. See footnote 17 of this opinion.

[15] We recognize that, in 2019, the General Assembly enacted the Connecticut Uniform Trust Code; General Statutes (Supp. 2020) § 45a-499aa et seq.; which expressly recognizes a continuing duty on the part of a removed trustee. For example, General Statutes (Supp. 2020) § 45a-499xx provides in relevant part: "(a) . . . [U]ntil the trust property is delivered to a successor trustee or other person entitled to it, a trustee who has resigned or been removed has the duties of a trustee and the powers necessary to protect the trust property. (b) A trustee who has resigned or been removed shall proceed expeditiously to deliver the trust property within the trustee's possession to the cotrustee, successor trustee or other person entitled to it. . . ." Furthermore, pursuant to General Statutes (Supp. 2020) § 45a-499hhh (a), a trustee is obligated to "keep adequate records of the administration of the trust," and pursuant to General Statutes (Supp. 2020) § 45a-499kkk (c) is required to "send a report to the current beneficiaries . . . at least annually and at the termination of the trust." Because the effective date of those enactments is January 1, 2020, they are inapplicable to our review.

[16] At oral argument before this court, counsel for DiPreta conceded that Sylvia had a legal duty to file an accounting subsequent to her June 11, 2013 removal as a cotrustee.

[17] In paragraph 15 of the breach of fiduciary duty count of his operative complaint, the plaintiff alleged that Sylvia, "by her continuing course of conduct intentionally and/or carelessly and negligently [handled] the [t]rust assets in the following particular ways . . .

"(c) By failing to safeguard and provide an accounting of [t]rust cars, 1928 Model A Roadster and 1948 MG-TC . . . .

"(f) By selling [t]rust antique car parts and memorabilia without disclosing

such sales, or accounting for the proceeds from such sales . . . .

"(g) By failing to properly account for, and continually [distribute], [t]rust cash to Victor Rakoczy for landscaping work performed on [nontrust] assets in a continuing course of action from 2004 to 2013. . . .

"(h) By failing to properly account for and continually distributing [t]rust cash as a continuing course of conduct to Cesar Tupac for nontrust related services from 2004 to 2013. . . .

"(i) By failing to properly account for, and continually distributing, trust cash as a continuing course of conduct to Temple Shalom for a nontrust related expenditure. Such payments total $1000 in 2013. . . .

"(j) By failing to properly account for cash distributions of principal and income as a continuing course of conduct in the amount of $428,405.53, resulting in the loss of a valuable trust asset from 2004 to 2009. . . .

"(s) By failing to keep accurate books and records pertaining to the [t]rust expenditures and distributions from 1997 through 2013. . . .

"(v) By failing to properly account for the distribution of the 1959 Mercedes Benz Roadster. . . ."

For purposes of our continuing course of conduct analysis, those allegations constitute the initial wrongs allegedly committed upon the plaintiff. See *Flannery* v. *Singer Asset Financial Co.*, *LLC*, supra, 312 Conn. 312.

[18] Although the plaintiff states in his appellate reply brief that DiPreta "still [has] not complied with" the Probate Court's order to provide an accounting with the Probate Court, no such allegation is contained in his operative complaint. Moreover, in both his reply to the statute of limitations special defense raised by DiPreta and his principal appellate brief to this court, the plaintiff conceded that DiPreta had "filed their accountings" with the Probate Court, albeit in an allegedly belated manner. At oral argument before this court, the plaintiff likewise acknowledged that DiPreta had filed an accounting with the Probate Court in 2015.

[19] We note that the proceedings before the Probate Court remained ongoing at the time that both the present action and the motions for summary judgment were filed. In that ancillary proceeding, the Probate Court is empowered to "enforce the delivery to the successor fiduciary of any estate held by the former fiduciary . . . ." General Statutes § 45a-244. General Statutes § 45a-175 (h) confers jurisdiction upon the Probate Court over the accountings of fiduciaries and provides in relevant part that "[i]n any action under this section, the Probate Court shall have . . . all the powers available to a judge of the Superior Court at law and in equity pertaining to matters under this section." Furthermore, parties to proceedings before the Probate Court, such as the plaintiff, retain the right to appeal from any "order, denial or decree of a Probate Court" pursuant to General Statutes § 45a-186.

[20] The record before us indicates that, at all relevant times, the antique automobiles and parts in question remained unaccounted for. In opposing the motions for summary judgment, the plaintiff furnished an affidavit from Margenot, in which he stated: "Part of my duties as the successor trustee is to take control of the trust assets. I was ordered by the Probate Court . . . to do an inspection of the 'Tunick Property' to look for two cars and/or parts. I was unsuccessful in finding the two cars at issue, and only found some nominal discarded car parts." The plaintiff also submitted the September 21, 2016 affidavit of Emanuel Dragone, owner of Dragone Classic Motorcars, in which Dragone averred that, in 1985, he assisted the settlor in moving truckloads of automobile parts worth more than $500,000 to be stored at the Tunick family home in Greenwich.

DiPreta has offered no affidavit regarding the automobiles or parts in question, which may be attributable to the fact that Sylvia died more than two years prior to the commencement of this action. Moreover, the materials in the record before us indicate that the plaintiff was very involved in the settlor's antique automobile business and, as the plaintiff stated in his memorandum of law in opposition to summary judgment, he was "very familiar . . . and extremely knowledgeable about the automobile collection and auto parts." The plaintiff nonetheless has not submitted a sworn affidavit on his own behalf.

[21] The 2002 inventory specifies a fair market value of $11,500 for the 1928 Model A and $14,000 for the 1948 MG-TC.

[22] In its July 7, 2004 decree, the Probate Court stated in relevant part: "[I]n regard to certain trust assets, specifically the antique [automobiles], they are to be sold, and that any [automobiles] that are kept by the beneficiaries or remainder beneficiaries of the trust, the value of the [automobile] shall be taken against the beneficiary's share of the trust. Once the [automobiles] are sold, a corporate trustee will be appointed and the remaining

[t]rustees will resign . . . ." The 2002 inventory of trust assets, which the plaintiff submitted in opposition to the motions for summary judgment, listed twenty-one antique automobiles with a combined fair market value of $795,450.

[23] Although the continuing course of conduct doctrine has been applied in medical malpractice cases; see, e.g., *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 746 A.2d 753 (2000); we note that such actions are governed by the limitation period contained in General Statutes § 52-584, which "begins to run when the plaintiff discovers some form of actionable harm . . . ." (Internal quotation marks omitted.) *Rosato* v. *Mascardo*, 82 Conn. App. 396, 405, 844 A.2d 893 (2004). For that reason, "the continuing course of conduct doctrine has no application after the plaintiff has discovered the harm" in actions subject to § 52-584. Id. Section 52-577, by contrast, is "solely a repose statute and contains no discovery provision." Id., 407.

[24] In *Martinelli*, the United States Court of Appeals for the Second Circuit held that, in cases involving a fiduciary, the burden shifts to the defendants to disprove that they fraudulently concealed the existence of the plaintiff's cause of action. See *Martinelli* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 196 F.3d 423.

[25] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

[26] In response, DiPreta correctly notes that, at the time that Sylvia was removed as a trustee, the Probate Court ordered her to submit a final accounting. DiPreta thus argues that his testimony regarding the services that he rendered on Sylvia's behalf subsequent to her removal as a trustee does not contravene that position.

———————————————