MORTON HANDLER ET AL. *v.* REMINGTON ARMS COMPANY, INC.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued February 6—decided March 26, 1957

*Jay E. Rubinow,* with whom were *D. J. Harry Webb, Jr.,* and, on the brief, *John D. LaBelle,* for the appellants (plaintiffs).

*DeLancey Pelgrift,* with whom was *George D. Stoughton,* for the appellee (defendant).

DALY, J. This negligence action was brought to recover damages for personal injuries sustained by the named plaintiff and expenditures made and to be made by the other plaintiff. The jury returned a verdict for the defendant. From the judgment rendered thereon the plaintiffs have appealed. In the assignments of error they claim that the court erred in refusing to charge the jury as requested and in the charge given.

The plaintiffs offered evidence to prove, and claimed to have proved, the following facts: On January 6, 1951, the named plaintiff, hereinafter referred to as the plaintiff, was sixteen years of age and a student at the Manchester High School. He was extremely well versed in the construction, operation and maintenance of firearms, having used them for a period of several years. A few days prior to January 6, Ronald Pitcher had loaned him a revolver. It had been purchased by Pitcher less than

a year before and had been fired on numerous occasions without incident. On January 6, the plaintiff and several other persons, including Pitcher, were at a practice shooting range used by members of the Manchester High School rifle team. Pitcher had with him ammunition manufactured by the defendant. It was of the proper size and type for use in his revolver and was in a small cardboard box of the kind used by the defendant in packaging and selling ammunition at retail. After the revolver had been fired by each member of the party at least once, the plaintiff took some cartridges from the box, inserted them in the chamber of the revolver and fired it. He then fired it again. When he did so, sparks flew from the revolver and part of the case of the discharged cartridge passed through his eye. The cartridge was defective as a result of the manner in which it had been constructed. The defect caused parts of the cartridge case to be exploded into the plaintiff's eye, and he sustained extremely serious injuries. The revolver was in good condition and was fired numerous times thereafter without incident. Because of the inspection methods employed by the defendant, defective cartridges manufactured by it could escape detection and be sold in the field of commerce.

The defendant offered evidence to prove, and claimed to have proved, the following: The ammunition was purchased by Pitcher more than a year before the suit was instituted, but less than a year before the plaintiff sustained his injuries. The tolerances of the revolver were greater than standard tolerances. The defendant observed, in the manufacture and inspection of its cartridges, reasonable standards of care. Although the revolver was fired without incident both before and after the plaintiff

was injured, this was happenstance, and it was unsafe for use.

The plaintiffs' requests to charge appear in the footnote.[1] The court, in its charge, did in general terms state the rule which permits a jury to reach conclusions by drawing reasonable inferences from facts found to be proven, but it made no reference to the specific principles of law set forth in the requests. The plaintiffs contend that one of the issues in the case was whether the cartridge in question was defective and that another was whether, if the cartridge was defective, the defect was caused by the negligence of the defendant in manufacturing and inspecting it. The propositions embodied in the first

---

[1] (1) "In determining what caused the injury to Morton Handler's eye, you are entitled to draw reasonable inferences from the facts that have been put in evidence. There is evidence in this case that the injury to Morton Handler's eye occurred simultaneously with the firing of the third cartridge; that he immediately felt a hot object entering his eye; that sparks came back toward him from the gun; that the objects that entered his eye traveled with considerable force and speed; that the objects would not respond to a magnet; and that the priming cup of the cartridge is nonmagnetic. You are entitled to consider this evidence and to draw inferences from it. If these facts produce in your mind a reasonable belief in the probability that a defective cartridge caused the injury to Morton Handler's eye, that is all that the law requires in the way of proof. In order to find that a defective cartridge caused the injury to Morton Handler's eye, you do not have to exclude every other possibility. It is enough if you believe it more probable than not that the injury to Morton Handler's eye was due to a defective cartridge. . . ."

(2) "The evidence in this case is sufficient to prove that the cartridge fired by Morton Handler was defective if you find from the evidence that it is reasonably probable that the cartridge was defective. The plaintiffs prove that the cartridge was defective if you find it more probable than not that the cartridge was defective. . . ."

(3) "[I]f a defective cartridge injures a person using it in the type of gun that the manufacturer ought reasonably to anticipate it will be used in, you may infer from the fact that the cartridge is defective that the defect was due to some negligence in the manufacture or inspection of the cartridge. . . ."

and second requests were correct statements of the applicable rules of law. *Dickson* v. *Yale University,* 141 Conn. 250, 253, 105 A.2d 463; *LeBlanc* v. *Grillo,* 129 Conn. 378, 382, 28 A.2d 127. Likewise, the proposition contained in the third request was an accurate statement of the applicable rule of law. *Jump* v. *Ensign-Bickford Co.,* 117 Conn. 110, 120, 167 A. 90. "When evidence is offered by either party to prove a certain state of facts, and the claim is made that they are proved, and the court is correctly requested to charge the jury what the law is as applicable to the case, the court must comply." *Berman* v. *Kling,* 81 Conn. 403, 407, 71 A. 507; *Morris* v. *Platt,* 32 Conn. 75, 82. The substance of the plaintiffs' requests to charge, which were correct and adapted to the issues, should have been incorporated in the charge. The court erred in refusing to charge the jury as requested by the plaintiffs.

The defendant averred, in an amendment to its answer, that the act or omission alleged in the complaint occurred more than one year prior to the commencement of this action and that the "right of action for the cause stated in the complaint did not accrue within one year next before the commencement of this action." The court in its charge read the relevant portion of § 8324 of the General Statutes. This section provides that no action to recover damages for injury to the person caused by negligence shall be brought but within one year from the date of the act or omission complained of. The court then said: "The act or omission complained of here is not the injury. The act or omission complained of is the sale of this particular ammunition; the sale of this particular bullet. . . . Now, the injury occurred on January 6, 1951, and this action was started and service was made on December 18,

1951. . . . So that if in your consideration of the evidence, you find that the particular bullet, the particular ammunition was purchased prior to December 19th, 1950 . . . then this particular special defense will apply." This charge amounted to the court's instructing the jury that the only act or omission complained of was the sale of the cartridge and that if they found that the cartridge was sold more than one year prior to December 18, 1951, the date upon which this action was commenced, the plaintiffs could not prevail.

The sale of the ammunition was not the only act or omission complained of. The plaintiffs alleged in their complaint and the amendment to it, and, as shown by the finding, offered evidence to prove, and claimed to have proved, that the defendant, although knowing that the cartridge, if defective, would be an inherently dangerous article and a source of unreasonable risk of injury to those who might use it, permitted it to be available for future use without indicating by label or otherwise the danger to which the user would expose himself. This was not a claim of an act or omission completed at the time the ammunition was sold to Pitcher. Instead it was a claim of conduct continuing to the time of injury. When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. *Vilcinskas* v. *Sears, Roebuck & Co.*, 144 Conn. 170, 174, 127 A.2d 814. The plaintiffs' claim that the court erred in charging the jury as quoted in the paragraph above is a valid one.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion INGLIS, C. J., BALDWIN and O'SULLIVAN, Js., concurred; WYNNE, J., dissented.