[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, six of the grandchildren of Nicholas Velardi, the deceased former president of Leonard Concrete Pipe Company, Inc. of Hamden ("Corporation"), bring this action against Ralph Mongillo seeking monetary damages resulting from an alleged breach of his obligations to them as a custodian pursuant to the Connecticut Uniform Gifts to Minors Act, 45a-546 et seq. C.G.S. (formerly 45-101 et seq.).
The court finds the facts to be as follows. As part of his estate planning in 1967, Nicholas Velardi caused some of the indebtedness of Leonard Concrete Pipe Co., Inc. to him to be transferred to his grandchildren via promissory notes. Mr. Velardi had ten grandchildren: four were the children of his son, Leonard Velardi, who was engaged in the business known as Leonard Concrete Pipe Co., Inc., and the six plaintiffs, who were the children of Nicholas' daughter, Edith Velardi Castellano.
Nicholas Velardi made each of the plaintiffs, who were minors in 1967, the gift of a demand note in the amount of $4,000.00, bearing interest at the rate of six percent per year payable in quarterly installments with the principal due in ten years, that is, on December 18, 1977. The defendant has admitted that each of these six gifts, in compliance with the Uniform Gift to Minors Act, was duly executed and delivered by Nicholas Velardi on December 18, 1967, to the defendant as custodian for each plaintiff. Mr. Mongillo signed a written acknowledgment of each note with the following text: "Ralph Mongillo hereby acknowledges receipt of this security as custodian for the above minor under the Conn. Unif. Gift to Minors Act." The statement of gift on each note is as following: "I, Nicholas Velardi hereby deliver to Ralph Mongillo as custodian for [name of grandchild] under the Conn. Unif. Gifts to Minors Act this security without recourse."
At the time of these transactions, the attorney who was assisting Mr. Velardi in his estate planning explained to Mr. Mongillo the operation of the Uniform Gift to Minors Act.
From 1967 to December 1988, Mr. Mongillo, who was an office CT Page 11543 of Leonard Concrete Pipe Co., Inc., caused the corporation to pay quarterly interest in the amount of $60.00 to each of the plaintiffs by sending checks to the plaintiffs' mother, who distributed them to the plaintiffs. Until December 1988, none of the plaintiffs ever saw the notes, and none of them ever knew who they were receiving the quarterly checks. Their mother explained "it's from your grandfather," and the plaintiffs had a vague impression that the checks might represent dividends.
When the notes came due on December 8, 1977, Mr. Mongillo who was executive vice-president of Leonard Concrete Pipe Co. Inc., decided that the company could not pay of these indebtednesses. In his role as custodian, he made no attempt to obtain payment from the corporation, and he did not advise the plaintiffs of their right to demand payment or attempt to communicate with them or anyone acting on their behalf.
In December 1988, Mr. Mongillo decided that the corporation was sufficiently solvent to pay off the six notes, and he cause it to issue a check to each of the plaintiffs in the amount of $4,060.00, representing the principal plus one quarterly interest payment.
Between December 1977, when the notes came due, and December 1988, when they were paid, Leonard Concrete Pipe borrowed money from other sources at rates in excess of six percent, the rate of the notes at issue.
None of the plaintiffs had any knowledge of the existence of the notes until they were delivered to them along with the payments of principal in December 1988. They commenced this suit on March 13, 1990.
The plaintiffs reached the age of majority on the following dates:
 Robert Castellano October 13, 1972 John Castellano June 27, 1974 Mark Castellano January 14, 1976 William Castellano March 13, 1978 Jane Castellano April 26, 1980 Joan Castellano Soilleux April 26, 1980
The defendant did not consult any of the plaintiffs when they reached age 21 to ascertain whether they wished to make CT Page 11544 demand as to their note, nor did he supply any of them with the notes upon their reaching majority.
Mr. Mongillo claims to have received oral instructions from Nicholas Velardi not to pay the notes until the corporation was financially able to do so. Neither the terms of the note not those of the gift were ever amended in writing to reflect such instructions.
SPECIAL DEFENSES
The defendant raises two special defenses. The first is that the terms of Nicholas Velardi's gifts to his grandchildren were amended orally by Mr. Velardi to the effect that he instructed the defendant "that said notes were to be paid when Leonard Concrete Pipe Co., Inc. was in a financial position to pay same." Answer and Special Defenses, filed May 18, 1990.
Section 45a-547 C.G.S. (formerly 45a-102 C.G.S.) sets forth the method by which a gift may be made pursuant to the Uniform Gift to Minors Act. That statute prescribes the text of the statement of gift. Section 4a-548 C.G.S. provides that by making a gift in a manner prescribed in 45a-546-556 inclusive, "the donor incorporates in his gift all the provisions of said sections." Among the included statutory terms of a gift made under the UGMA is the provision in 45a-549(d) that if custodian property is not expended for the benefit of the minor before the minor reaches age twenty-one, "the custodian shall deliver or pay it over to the minor on his attaining the age of twenty-one years. . . ." [emphasis supplied]. The statutory scheme does not support an option of a donor to alter the statutory terms of the gift in the manner suggested; and since the mandatory "shall" if used in connection with payment at majority, the statute cannot be read to authorize a custodian to heed contrary directions from a donor. The first special defense must fail.
The defendant's second special defense is that the statute of limitations bars the plaintiffs' action. The defendant urged that the applicable limitations period is six years, pursuant to52-576 C.G.S., which applies to actions brought to enforce written contract.
The cause of action alleged by the plaintiffs is not however, breach of contract but breach of fiduciary duties pursuant to 45-104, now codified as 45a-549 (Complaint CT Page 11545 paragraph 11). These duties, the scope of which is discussed below, continued so long as the defendant held property a custodian for the defendants.
The wrong sued upon here is the failure of the defendant, a custodian, to discharge his duties toward the beneficiaries When a wrong sued upon consists of a continuing course of conduct, the Connecticut Supreme Court has held that the statute of limitations does not begin to run until that course of conduct is completed. Handler v. Remington Arms Co., 144 Conn. 316, 32 (1957); Vilcinskas v. Sears, Roebuck Co., 144 Conn. 170, 17 (1956).
The conduct of which the plaintiffs complain is the holding by the defendant of assets which he was required to turn over to them. This course of conduct continued until December 1988, when the defendant turned over the proceeds from the notes. Suit was commenced on March 13, 1990, well within the period of limitations applicable either for torts (52-577 C.G.S.) or for breach of contract. The situation is most analogous to that presented in McDonald v. Hartford Trust Co., 104 Conn. 169, 189 (1926), suit by the beneficiaries of a trust against the trustee. The Court ruled in McDonald that the statute of limitations did not begin to run so long as the trustee continued to serve a trustee. Under these principles, the defendant's second special defense fails, as the plaintiffs have clearly brought suit within two years after the custodian stopped withholding the notes.
DISCUSSION
Pursuant to 45a-549(d) C.G.S., a custodian under the UGMA has a duty to deliver custodial property to the minor beneficiary upon the beneficiary's reaching the age of 21. The defendant clearly breached this statutory duty. He chose to act for the benefit of the corporation that employed him and had the advantage of the use of the $24,000.00 at the low interest rate of six percent per year, and he failed to fulfill his duty to benefit the beneficiaries by enforcing the notes on their due date and/or by turning the notes over to them at age 21 so the beneficiaries could enforce them and have the use of the proceeds.
By continuing to hold the notes, which were payable in December 1977, until after the date each beneficiary reached the age of majority, the defendant deprived them of the opportunity to make demand, collect their $4,000.00, and earn the prevailing CT Page 11546 interest rate on it. Since the defendant continued to obtain interest payments on each beneficiary's behalf in the amount of six percent, the measure of damages is the difference between that six percent and the annual interest rate the plaintiff could have earned elsewhere. The defendant conceded that Leonard Concrete Pipe Company, Inc. borrowed money between 1977 and 1988 to pay obligations other than the notes of which the plaintiff were beneficiaries. The court finds that the cost of borrowing at that time was well in excess of the six percent interest rate in the notes at issue, such that the defendant was giving the corporation the advantage of cheap loans to the detriment of the beneficiaries.
On the basis of the testimony of plaintiff Mark Castellano the court finds that the defendant's conduct deprived the plaintiffs of the following excess interest over the six percent rate for each of the following years:
 1978 6% 1979 9% 1980 8%
None of the plaintiffs presented any evidence as to interest rates earnable or payable for 1981 to 1988, and the court therefore lacks any evidentiary basis for any finding of depreciation of earning power for that period. While there are in evidence various tables of calculation of interest based on various rates, there was no underlying evidence to support the selection of any particular rate as applicable after 1980 other than the statutory rate pursuant to 37-3a C.G.S. That rate is applicable for the retention of payment after it comes due and the court adopts the statutory rate of eight percent from 1981-83 and ten percent thereafter, reflecting the applicable statutory rates for the various years. Since six percent interest was paid from 1981 to 1988, the applicable additional interest due is two percent for 1980-83 and four percent from 1984 to 1988.
The court finds that since the notes came due in December 1977, Robert, John and Mark Castellano, who had already reached the age of majority by that date, are entitled to recover damages in the amount of the difference in annual interest rates set forth above as follows:
 1978 (6%) $ 240.00 1983 (2%) $ 80.00 1979 (9%) 360.00 1984 (4%) 160.00 CT Page 11547 1980 (8%) 320.00 1985 (4%) 160.00 1981 (2%) 80.00 1986 (4%) 160.00 1982 (2%) 80.00 1987 (4%) 160.00 1988 (4%) 160.00 ------- $2,040.00
William Castellano, who should have received the note when he reached age 21 on March 13, 1978, is owed three months' less interest, or $1,980.00.
Jane Castellano and her twin sister, Joan Castellano Soilleux, who reached age 21 on April 26, 1980, are due additional interest from that date, calculated by the court to amount to $1,440.00.
The court has not calculated compound interest because no evidence was presented to support the conclusion that, had the notes been delivered to them, the beneficiaries would have invested the income from the notes. On the contrary, Mark Castellano testified that he had borrowed money during the period at issue, and it appears that had he had access to the $4,000.00 its value would have been simply to reduce the amount he had to borrow at the prevailing interest rate.
Judgment shall enter against the defendant, Ralph Mongillo in the total amount of $10,980.00 as follows: as to Robert Castellano, $2,040.00; as to John Castellano, $2,040.00; as to Mark Castellano, $2,040.00; as to William Castellano, $1,980.00; as to Jane Castellano, $1,440.00; and as to Joan Castellano Soilleux, $1,440.00.
The plaintiffs shall recover their court costs.
Beverly J. Hodgson Judge of the Superior Court CT Page 11548