******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JESSICA ROMAN *v.* A&S INNERSPRINGS USA, LLC
(AC 46206)

Alvord, Elgo and Prescott, Js.

*Syllabus*

The plaintiff sought to recover damages for the alleged wrongful termination of her employment by the defendant, which she claimed was the result of pregnancy discrimination in violation of the Connecticut Fair Employment Practices Act (§ 46a-51 et seq.). The plaintiff, who previously had worked for the defendant, was rehired in November, 2017, in a quality assurance position that required her to work on the defendant's manufacturing floor. In January, 2018, the plaintiff notified the defendant that she was pregnant and, consequently, could no longer work in a manufacturing position. Pursuant to the defendant's policy, as set forth in its employee handbook, any employee who was disabled as a result of pregnancy was entitled to an unpaid leave of absence and the defendant was required to make a reasonable effort to transfer the employee to any suitable temporary position that was available at the time it received notice of the employee's pregnancy. The plaintiff signed paperwork to take maternity leave on January 25, 2018. She alleged that, although there was an open administrative position in February, 2018, the defendant told her that no such position was available and encouraged her to "stay home and take care of the baby." Between October, 2017, and October, 2018, the defendant experienced a significant downsizing of its business, reducing its workforce from approximately thirty-three employees to fourteen. In September and October, 2018, the plaintiff reached out to M, the defendant's chief executive officer, asking for a status update. M informed the plaintiff that the defendant was planning to hire a new administrative worker and that she could apply for the position, however, it was not yet being advertised. He encouraged her to reach out to her former supervisor, S, for additional information. In November, 2018, the plaintiff contacted S, who informed her that she could not return to her prior position, as the department it was in had closed and the position no longer existed. He noted, however, that an administrative position was available and that she could apply for it or meet with him to discuss it further. There was no evidence in the record indicating that the plaintiff thereafter applied to the position or contacted S for additional information. On May 31, 2019, the plaintiff filed an employment discrimination complaint with the Commission on Human Rights and Opportunities. Thereafter, the commission issued a release of jurisdiction over the complaint, and the plaintiff commenced the present action against the defendant, claiming that it had discriminated against her by failing to transfer her to an administrative position in February, 2018, by terminating her employment effective October 30, 2018, and by failing to rehire her. The defendant filed a motion for summary judgment, arguing that the complaint was untimely pursuant to the applicable statute ((Rev. to 2017) § 46a-82 (f)) because none of the alleged acts of discrimination occurred within 180 days of the filing of the plaintiff's complaint with the commission. The trial court granted the defendant's motion, and the plaintiff appealed to this court. *Held:*

1. The trial court properly rendered summary judgment for the defendant because it did not err in determining that the plaintiff's claims of three distinct acts of pregnancy discrimination failed: the plaintiff's claims that the defendant discriminated against her by failing to transfer her to an open administrative position in February, 2018, and by terminating her employment effective as of October 30, 2018, were barred by the statute of limitations because they were outside of the 180 day limitation period contained in (Rev. to 2017) § 46a-82 (f), as they occurred prior to December 2, 2018; moreover, although any claim that the defendant engaged in pregnancy discrimination by failing to rehire the plaintiff on or after December 2, 2018, was not barred by the statute of limitations, the trial court properly found that no genuine issue of material fact existed as to whether the plaintiff had met her burden of establishing a prima facie case of discrimination with respect to such failure in

accordance with the framework established in *McDonnell Douglas Corp.* v. *Green* (411 U.S. 792), because, even when viewed in the light most favorable to the plaintiff, nothing in her email exchange with M, which she relied on to support her claim, demonstrated that she suffered an adverse employment action on or after December 2, 2018, as there was no evidence in the emails that the defendant had any open positions in January or February, 2019, or that the plaintiff had applied for any open positions with the defendant, and the plaintiff admitted that she had never asked M if she could return to work for the defendant nor did she apply for a job with any employer between October 30, 2018, and June, 2019, when she returned to school.

2. Contrary to the plaintiff's claim, the continuing course of conduct doctrine did not operate to toll the limitation period set forth in (Rev. to 2017) § 46a-82 (f) for the acts of discrimination that allegedly occurred prior to December 2, 2018: the doctrine did not apply to the plaintiff's claims that the defendant improperly failed to transfer her to an administrative position that was open in February, 2018, and terminated her employment effective October, 2018, because that doctrine does not recognize an act or omission that is discrete and attributable to a fixed point in time and, accordingly, the plaintiff was required to file a complaint with the commission within the statutory limitation period that commenced after each act occurred; moreover, the doctrine did not apply to the plaintiff's failure to rehire claim, even though her pleadings relating to that claim were general in nature and, when broadly construed, encompassed conduct that transpired before and after December 2, 2018, because the failure to rehire was not a continuing violation and the plaintiff failed to establish that an adverse employment action occurred on or after December 2, 2018.

Argued November 6, 2023—officially released January 23, 2024

*Procedural History*

Action to recover damages for alleged employment discrimination, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Sicilian, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*James V. Sabatini*, for the appellant (plaintiff).

*Melinda B. Kaufmann*, for the appellee (defendant).

*Opinion*

ELGO, J. In this employment discrimination action, the plaintiff, Jessica Roman, appeals from the summary judgment rendered by the trial court in favor of the defendant, A&S Innersprings USA, LLC. On appeal, the plaintiff claims that the court improperly determined that (1) no genuine issue of material fact existed as to whether certain claims of pregnancy discrimination were time barred, as they occurred outside the 180 day limitation period contained in General Statutes (Rev. to 2017) § 46a-82 (f),[1] (2) the plaintiff failed to establish a prima facie case of discrimination on her claim that the defendant failed to rehire her on or after December 2, 2018, and (3) the continuing course of conduct doctrine did not toll the statute of limitations contained in § 46a-82 (f) with respect to any untimely claims. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, viewed in the light most favorable to the plaintiff, and procedural history are relevant to this appeal. The defendant is a small business located in Windsor Locks that manufactures innersprings for mattresses. It employed the plaintiff as an office assistant from April, 2016, to June, 2017, when she was dismissed for cause.[2] The defendant rehired the plaintiff in November, 2017, for a quality assurance position. That position involved various responsibilities on the manufacturing floor, including quality inspection.

On January 23, 2018, the plaintiff notified the defendant that she was pregnant. Her pregnancy disabled her from working in a manufacturing position. Per company policy, as documented in the defendant's employee handbook, "[a]ny employee who is disabled [as] a result of pregnancy is entitled to an unpaid leave of absence of a reasonable duration. . . . In addition, the [defendant] will make a reasonable effort to transfer a pregnant employee to any suitable temporary position which may be available when the employee gives written notice of her pregnancy . . . ." In her complaint filed in this action, the plaintiff alleged that, although the defendant had an open administrative position in February, 2018, it told her that no such position was available and encouraged her to "stay home and take care of the baby."[3] The plaintiff signed paperwork to take a maternity leave of absence on January 25, 2018.

It is undisputed that, at the time of the plaintiff's pregnancy, the defendant experienced a significant downsizing of its business. As the defendant's plant manager, Hernando Calle, stated in a sworn affidavit dated January 31, 2022, the defendant "reduced its workforce from approximately 33 employees in October 2017 to 14 employees in October 2018."

On September 5, 2018, the plaintiff sent an email to Dominik Meyer, the defendant's chief executive officer,

in which she stated: "Hello, Hope all is well. Hope you guys didn't forget about me? What's going on these days?" In his September 7, 2018 email reply, Meyer stated that he was "on vacation right now. Let us have a chat end of September. How is everything at your side? Hopefully you and your little one are doing [good]." The plaintiff sent another email to Meyer on September 17, 2018, in which she informed him that she gave birth to her child on September 14, 2018, and that "she and I are great . . . . I had [a] cesarean section done and need time to recover . . . but yes I'll be looking forward to speaking with you and I'm glad you are doing well yourself."

On October 30, 2018, the plaintiff again emailed Meyer and asked: "Can I please get an update of what's going on?" By email dated November 1, 2018, Meyer replied in relevant part: "[F]irst of all congratulations and thank you [for] still remembering [the defendant] . . . . Hopefully you all are doing great. . . . We do intend to hire a new employee for office stuff and customer relations. But part of this job will be [Q]uick [B]ooks work and a lot of [E]xcel tasks. In addition the new employee needs to be present (8 hours a day and this [is a] very constant and stable [position]). I am not sure if you could [fulfill] the [E]xcel tasks and if you are able to be in . . . [this] very stable [position]. Maybe much more difficult for you with your newborn. But of course you could send an application to [the defendant] and [I] am sure that they will consider you. I will be more and more out of [the defendant] so this is the best information [I] could give to you at this time. Job offer *is not on* [*the Indeed website*] *right now* [as] we are in a very early stage."[4] (Emphasis added.) Meyer also encouraged the plaintiff to contact Max Schreiner, an employee of the defendant who previously was her quality assurance supervisor, if she had any further questions. The plaintiff then visited the Indeed website and found no job posting by the defendant.

On November 14, 2018, the plaintiff sent a text message to Schreiner and the following exchange ensued:

"[The Plaintiff]: . . . I emailed [Meyer] and I was told to apply for an office position that's coming up . . . but I told him I was confused, wondering why would I need to apply if I was on leave of absence?

"[Schreiner]: That sounds good. [The defendant does] not have a quality assurance position any more. The department has been closed. Yes. Correct. You would have to apply for the administrative position, it is a full time job and posted on [the Indeed website].

"[The Plaintiff]: . . . [S]o I no longer have a job?

"[Schreiner]: . . . [The defendant] can not offer the same job to you as already informed, this position/ department has been cancelled/closed. I am sure you remember the [defendant's] situation. We only have one

position at the moment and it would be a job, 5 days a week 8 hours each day. If you want to apply or come and visit to talk about this position it is arrangeable."

There is nothing in the record before us indicating that the plaintiff further contacted Schreiner regarding that position or filed an application with the defendant. In fact, the plaintiff testified at her deposition that, following that text message exchange with Schreiner on November 14, 2018, she neither contacted the defendant, submitted an application, nor visited the defendant's office to discuss that position. The plaintiff also has not alleged or provided any evidence that she visited the Indeed website at any time following that November 14, 2018 exchange.

On May 31, 2019, the plaintiff filed an employment discrimination complaint with the Commission on Human Rights and Opportunities (commission), in which she alleged three distinct acts of pregnancy discrimination stemming from (1) the defendant's purported failure to transfer her to an open administrative position in February, 2018, (2) its termination of her employment "effective October 30, 2018," and (3) its failure to rehire her. On October 16, 2019, the commission issued a release of jurisdiction over that complaint.

On January 14, 2020, the plaintiff commenced the present action against the defendant. Her complaint contains one count alleging pregnancy discrimination in violation of General Statutes § 46a-60 (b) (7), a provision of the Connecticut Fair Employment Practices Act (act), General Statutes § 46a-51 et seq. The allegations of that complaint mirror those set forth in the complaint that the plaintiff filed with the commission and aver that the defendant failed to transfer her to an open administrative position in February, 2018, and that it "terminated [her] employment effective October 30, 2018." The plaintiff also broadly alleged that the defendant "failed to rehire [her]." In response, the defendant filed an answer and several special defenses. In its first special defense, the defendant alleged that the plaintiff's complaint to the commission "was not timely filed as required under [§] 46a-82 (f) as it does not allege actionable conduct occurring within the 180 days preceding the filing of the complaint with the [commission] . . . ."

On January 31, 2022, the defendant filed a motion for summary judgment. In its accompanying memorandum of law, the defendant argued, inter alia, that "not a single alleged act of discrimination occurred within 180 days" of the filing of the plaintiff's complaint with the commission, rendering it untimely. Appended to that memorandum were several exhibits, including copies of (1) the complaint and corresponding affidavit that the plaintiff filed with the commission, (2) portions of the plaintiff's December 23, 2021 deposition testimony, (3) portions of the defendant's employee handbook,

(4) the sworn affidavit of Calle, (5) a series of emails between the plaintiff and Meyer, and (6) the November 14, 2018 text message exchange between the plaintiff and Schreiner.

The plaintiff filed an objection to the motion for summary judgment, as well as a memorandum of law and exhibits that included portions of her deposition testimony, the November 14, 2018 text message exchange with Schreiner, and a series of emails between the plaintiff and Meyer. The defendant filed a reply to that objection on June 3, 2022.

After hearing argument from the parties, the court issued a memorandum of decision in which it concluded that the plaintiff had not filed a timely complaint with the commission regarding her claims that the defendant improperly failed to transfer her to an open administrative position in February, 2018, and that it improperly terminated her employment on October 30, 2018. The court further concluded that the plaintiff had failed to meet her burden under the framework established in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802–804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), to make out a prima facie case of discrimination with respect to her claim that the defendant failed to rehire her on or after December 2, 2018.[5] Accordingly, the court rendered summary judgment in favor of the defendant, and this appeal followed.

As a preliminary matter, we note the well established standard that governs our review of a trial court's decision to grant a motion for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . [T]he moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 772–73, 176 A.3d 1 (2018).

Pursuant to General Statutes (Rev. to 2017) § 46a-82 (f), any person claiming to be aggrieved by an alleged discriminatory practice is required to file a complaint

with the commission "within one hundred and eighty days after the alleged act of discrimination . . . ." As our Supreme Court has held, compliance with that time limit is mandatory unless "waiver, consent, or some other compelling equitable tolling doctrine applies." *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 284, 777 A.2d 645 (2001). In the present case, the plaintiff filed her complaint with the commission on May 31, 2019. She concedes that, for purposes of calculating the limitation period contained in § 46a-82 (f), the operative date is December 2, 2018.

Our analysis, therefore, is twofold in nature. We first determine whether any of the acts of discrimination alleged by the plaintiff occurred within the limitation period circumscribed by § 46a-82 (f) and, if so, whether the plaintiff established a prima facie case of discrimination. We then consider the plaintiff's claim that the continuing course of conduct doctrine operated to toll that statute of limitations with respect to any acts that occurred outside that limitation period.[6]

I

We begin with the material allegations asserted by the plaintiff. In her complaint, the plaintiff alleged three distinct acts of pregnancy discrimination on the part of the defendant: (1) its failure to transfer her to an administrative position that "was open" in February, 2018; (2) its termination of her employment "effective October 30, 2018"; and (3) its failure to "rehire" her.

A

The first two alleged acts of discrimination occurred prior to December 2, 2018, and, thus, plainly are outside the time limitation of § 46a-82 (f). The plaintiff does not argue otherwise in this appeal. Accordingly, her claims with respect to the defendant's failure to transfer her to an open administrative position in February, 2018, and its termination of her employment "effective October 30, 2018," are barred by that statute of limitations.

B

More nuanced is our analysis of the third act of discrimination alleged by the plaintiff. The plaintiff did not specify any date on which that act allegedly occurred but, rather, simply stated in paragraph 27 of her complaint: "The defendant failed to rehire the plaintiff."[7] To the extent that the defendant's purported failure to rehire the plaintiff occurred prior to December 2, 2018, the plaintiff's claim is time barred.

At the same time, we are mindful that "a court, in deciding a motion for summary judgment, must view the facts in the light most favorable to the nonmoving party . . . ." *Peek* v. *Manchester Memorial Hospital*, 342 Conn. 103, 114, 269 A.3d 24 (2022). We therefore cannot presume that the plaintiff intended to confine

her failure to rehire allegation to events occurring prior to December 2, 2018, but, rather, must construe her allegation broadly to also encompass events occurring *on or after* that date. To the extent that the plaintiff alleges that the defendant failed to rehire her on or after December 2, 2018, we conclude that her claim is not barred by the statute of limitations contained in § 46a-82 (f).

C

The question, then, is whether a genuine issue of material fact exists as to whether the plaintiff met her burden under the framework established in *McDonnell Douglas Corp.* v. *Green*, supra, 411 U.S. 802–804, to make out a prima facie case of discrimination with respect to her claim that the defendant failed to rehire her on or after December 2, 2018. We conclude that the trial court properly answered that question in the negative.

"The framework this court employs in assessing . . . discrimination claims under Connecticut law was adapted from the United States Supreme Court's decision in *McDonnell Douglas Corp.* v. *Green*, [supra] 411 U.S. 792 . . . . Under the *McDonnell Douglas Corp.* burden shifting analysis, the employee must first make a prima facie case of discrimination. . . . The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. . . . The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." (Citation omitted; internal quotation marks omitted.) *Rossova* v. *Charter Communications, LLC*, 211 Conn. App. 676, 684–85, 273 A.3d 697 (2022).

With respect to the initial burden under that framework, "a plaintiff establishes a prima facie case of intentional discrimination by showing that (1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] held; (3) [she] suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." (Internal quotation marks omitted.) *Reynolds* v. *Barrett*, 685 F.3d 193, 202 (2d Cir. 2012); see also *Sosa* v. *Robinson*, 200 Conn. App. 264, 290, 239 A.3d 1228 (2020). We focus our attention on the question of whether the plaintiff suffered an adverse employment action on or after December 2, 2018.

In her objection to the motion for summary judgment, the plaintiff argued that, although the defendant had "terminated [her] employment effective October 30, 2018," she "continued to communicate with the defendant about being brought to work following her maternity leave of absence. In January, 2019, [she] was communicating with the defendant about returning to work.

. . . The communication continued into February, 2019." (Citation omitted.) As evidence of that communication, the plaintiff attached a series of emails between her and Meyer as an exhibit to her objection. As the court noted in its memorandum of decision, "[d]uring oral argument on the motion for summary judgment, the plaintiff's counsel acknowledged that the only evidence the plaintiff claims to give rise to a disputed issue of fact as to the plaintiff's claim that she continued to seek employment through February, 2019, is a series of email communications contained in [an exhibit] attached to the plaintiff's objection to the motion for summary judgment. Counsel acknowledged that there is no deposition testimony, affidavit, or other evidence relevant to that issue." Those emails, therefore, require close scrutiny.

The email exchange between the plaintiff and Meyer began when Meyer reached out to the plaintiff on January 24, 2019, to inquire on her "status right now."[8] When she responded on January 28, 2019, the plaintiff stated: "I am very well recovered from the cesarean section, [my daughter] and I are doing great, thanks for asking. Nothing happened between [Schreiner] and I? My status lately is that I am currently seeking employment and considering going back to school. Congratulations! That's exciting. . . . Costa Rica huh, nice choice. I will definitely consider it."

Meyer replied to that email the next morning and the following exchange transpired:

"[Meyer]: . . . [Y]ou did not speak with [Schreiner]? Why not? But nevertheless: What are you looking for? Full-Time, Halftime, Working times? Maybe [I] can help. . . .

"[The Plaintiff]: . . . Are you currently in the [United States]? I'm looking for full time but, I would like to speak with you in person. . . .

"[Meyer]: . . . [I] will be in the [United States] in two weeks . . . . Of course we can speak in person - as always [I] am quite sure that we will figure out something . . . . You said back to school. What in specific you were thinking of? . . .

"[The Plaintiff]: I actually wanted to move towards growing on the experience I already have, I was looking into bookkeeping because I would train in administrative work and also accounting. What do you think? . . .

"[Meyer]: . . . [L]et's speak in detail about this when [I] am back . . . . Maybe you can prepare something and [I] can give you feedback. Until then keep [your] head high and all the best for your kids and especially the newborn."

On February 12, 2019, Meyer again reached out to the plaintiff and stated: "I am here this week. So if good for you to meet. Let's discuss." The plaintiff and Meyer then agreed to meet on Friday, February 15, 2019. On

that date, the plaintiff emailed Meyer and stated: "I will not be able to see you today, would Monday be okay to meet?" The following exchange then occurred through email:

"[Meyer]: . . . [I] have an appointment on [M]onday and fly out on [Monday] as well. Will be back in [M]arch otherwise. . . .

"[The Plaintiff]: . . . Until what time will you be there today? . . .

"[Meyer]: 16:30 approximately.

"[The Plaintiff]: Okay.

"[Meyer]: [O]therwise Sunday. Nobody is working today (in production) anyhow."

The plaintiff did not respond further to Meyer that Friday.

On the afternoon of Saturday, February 16, 2019, the plaintiff emailed Meyer and stated: "I'll meet you tomorrow, what time works for you?" In an email sent at 5:44 p.m. the next day, Meyer stated: "[I] was in Boston today. So not in the office. I was waiting on Friday as I expected you to come in. What happened?" No further correspondence between the plaintiff and Meyer is included in the materials submitted by the plaintiff.

Even when viewed in a light most favorable to the plaintiff, nothing in the foregoing email exchange demonstrates that she suffered an adverse employment action on or after December 2, 2018. In those emails, the plaintiff indicated that she was contemplating both a return to work and "going back to school" and that she would welcome Meyer's feedback in this regard. In his responses, Meyer expressed a willingness to meet with the plaintiff and confirmed a date on which to do so. Those emails further indicate that the plaintiff did not attend the meeting scheduled on Friday, February 15, 2019, and did not respond to Meyer when he asked "[w]hat happened?"

There also is no indication in those emails—or any of the materials submitted in connection with the motion for summary judgment—that the defendant had any open positions in January or February, 2019, or that the plaintiff applied for any positions with the defendant. To the contrary, the plaintiff admitted, in her December 23, 2021 deposition, that she never asked Meyer if she could come back to work for the defendant and that she did not apply for a job with *any* employer between October 30, 2018, and June, 2019, when she returned to school.

In light of the foregoing, we conclude that no genuine issue of material fact exists as to whether the plaintiff met her burden of establishing a prima facie case of discrimination by showing that she suffered an adverse employment action with respect to the defendant's fail-

ure to rehire her on or after December 2, 2018.

## II

The plaintiff also claims that the continuing course of conduct doctrine applies in the present case and operates to toll the statute of limitations contained in § 46a-82 (f) for acts of discrimination that occurred outside its limitation period. We do not agree.

Our decisional law recognizes that "[t]he question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo. . . . The issue, however, of whether a party engaged in a continuing course of conduct that tolled the running of the statute of limitations is a mixed question of law and fact." (Internal quotation marks omitted.) *Medical Device Solutions, LLC* v. *Aferzon*, 207 Conn. App. 707, 754–55, 264 A.3d 130, cert. denied, 340 Conn. 911, 264 A.3d 94 (2021). Whether the continuing course of conduct doctrine properly may be applied in a given context is a legal question distinct from the factual question of whether a party engaged in such conduct in a particular instance. Our review of that question of law is plenary. See, e.g., *State* v. *Campbell*, 328 Conn. 444, 477 n.11, 180 A.3d 882 (2018).

"The continuing course of conduct doctrine operates to delay the commencement of the running of an otherwise applicable statute of limitations." *Tunick* v. *Tunick*, 201 Conn. App. 512, 535, 242 A.3d 1011 (2020), cert. denied, 336 Conn. 910, 244 A.3d 561 (2021); see also *Handler* v. *Remington Arms Co.*, 144 Conn. 316, 321, 130 A.2d 793 (1957) ("[w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed"). The doctrine "reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied."[9] (Internal quotation marks omitted.) *Martinelli* v. *Fusi*, 290 Conn. 347, 356, 963 A.2d 640 (2009).

As our Supreme Court has explained, "the continuing course of conduct doctrine recognizes that the act or omission that commences the limitation period may not be discrete and attributable to a fixed point in time. [T]he doctrine is generally applicable under circumstances where [i]t may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of [action] to terminate before allowing the repose section of the [limitation period] to run . . . ." (Internal quotation marks omitted.) *Essex Ins. Co.* v. *William Kramer & Associates, LLC*, 331 Conn. 493, 503, 205 A.3d 534 (2019); cf. *Watts* v. *Chittenden*, 301 Conn. 575, 588–89, 22 A.3d 1214 (2011) (alleged violation "would not be deemed continuing" when acts of dis-

crimination are discrete and "readily calculable without waiting for the entire series of acts to end" (internal quotation marks omitted)).

"Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws." *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 407, 944 A.2d 925 (2008). The courts of this state thus "look to federal law for guidance in interpreting state employment discrimination law, and analyze claims under [the act, the state counterpart to Title VII] in the same manner as federal courts evaluate federal discrimination claims." (Internal quotation marks omitted.) *Karagozian* v. *USV Optical, Inc.*, 335 Conn. 426, 438 n.5, 238 A.3d 716 (2020); see also *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, 322 Conn. 154, 160, 140 A.3d 190 (2016) ("[w]e . . . have recognized that our legislature's intent, in general, was to make [the act] complement the provisions of Title VII"); *Pik-Kwik Stores, Inc.* v. *Commission on Human Rights & Opportunities*, 170 Conn. 327, 331, 365 A.2d 1210 (1976) ("[a]lthough the language of [Title VII] and that of the [act] differ slightly, it is clear that the intent of the legislature . . . was to make the Connecticut statute coextensive with the federal"). Significantly, the United States Supreme Court has held that federal law "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *National Railroad Passenger Corp.* v. *Morgan*, 536 U.S. 101, 105, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); see also *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 706 n.12, 900 A.2d 498 (2006) (quoting *National Railroad Passenger Corp.* v. *Morgan*, supra, 114, for proposition that each discrete incident of discrimination constitutes separate unlawful employment practice).

The United States Supreme Court has further explained that a discrete discriminatory act is one that " 'occurred' on the day that it 'happened.' A party, therefore, must file a [complaint] within [the statutory limitation period] or lose the ability to recover for it." *National Railroad Passenger Corp.* v. *Morgan*, supra, 536 U.S. 110. Accordingly, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The [complaint], therefore, must be filed within the [statutory limitation] period after the discrete discriminatory act occurred." Id., 113. Discrete acts in the employment discrimination context include "termination, failure to promote, denial of transfer, or refusal to hire . . . ." Id., 114; accord *Hurley* v. *Naugatuck Board of Education*, Superior Court, judicial district of Waterbury, Docket No. CV-15-6029009-S (July 22, 2016) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are individual acts that occur at a fixed time . . . .

Accordingly, plaintiffs alleging such discriminatory action must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others." (Internal quotation marks omitted.)).

In her complaint, the plaintiff alleged two discrete discriminatory acts with specificity—that the defendant failed to transfer her to an administrative position that "was open" in February, 2018, and that it terminated her employment "effective October 30, 2018." Those pleadings demonstrate that, with respect to both acts, it was not "impossible to pinpoint the exact date of a particular negligent act or omission that caused injury . . . ." (Internal quotation marks omitted.) *Essex Ins. Co.* v. *William Kramer & Associates, LLC*, supra, 331 Conn. 503. Accordingly, to properly exhaust her administrative remedies, the plaintiff was obligated to file a complaint with the commission within the statutory limitation period after each of those discrete discriminatory acts occurred. See *National Railroad Passenger Corp.* v. *Morgan*, supra, 536 U.S. 113. We therefore conclude that the continuing course of conduct doctrine has no application with respect to those discrete acts.

The continuing course of conduct doctrine likewise does not apply to the plaintiff's failure to rehire claim. We recognize that her pleadings as to that alleged act of discrimination are general in nature and, broadly construed, encompass conduct that transpired both before and after December 2, 2018. See part I B of this opinion. While an employer's failure to rehire a plaintiff can constitute an adverse employment action, it "does not constitute a continuing violation . . . . Each alleged discriminatory [act] constitutes a separate and completed act by the defendant." (Internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, supra, 278 Conn. 706 n.12; see also *Morris* v. *Cabela's Wholesale, Inc.*, 486 Fed. Appx. 701, 704 (10th Cir. 2012) (concluding that "[the defendant's] alleged retaliatory failure to rehire [the plaintiff] was a discrete act"); *Boge* v. *Ringland-Johnson-Crowley Co.*, 976 F.2d 448, 451 (8th Cir. 1992) ("[A]n employer's failure to recall or rehire does not constitute a continuing violation . . . . Each alleged discriminatory recall constitutes a separate and completed act by the defendant, which triggers a new [statutory limitation] period." (Internal quotation marks omitted.)); *Berry* v. *Board of Supervisors of L.S.U.*, 715 F.2d 971, 980 (5th Cir. 1983) (defendant's "failure to rehire was a discrete act which was not part of a continuing violation"); *Everett* v. *357 Corp.*, 453 Mass. 585, 606–607, 904 N.E.2d 733 (2009) ("the failure to rehire an employee is considered a discrete, separate act that does not draw other allegedly discriminatory acts into its scope").

As the United States Supreme Court has held, "discrete acts that fall within the statutory time period do

not make timely [those] acts that fall outside the time period." *National Railroad Passenger Corp.* v. *Morgan*, supra, 536 U.S. 112. In applying the continuing course of conduct doctrine, the Connecticut Supreme Court likewise has held that "at some point there must be a limitation on the ability to file an action to recover for such conduct. Therefore, in such cases, if no conduct has occurred within the [statutory limitation period], the plaintiff will be barred from recovering for the prior actions . . . ." *Watts* v. *Chittenden*, supra, 301 Conn. 596; see also *Burnam* v. *Amoco Container Co.*, 755 F.2d 893, 894 (11th Cir. 1985) (per curiam) ("a failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in the refusal to rehire itself, cannot resurrect the old discriminatory act"). For that reason, the plaintiff's invocation of the continuing course of conduct doctrine is unavailing with respect to her failure to rehire claim, as she has not established that an adverse employment action occurred on or after December 2, 2018. See part I C of this opinion.

We conclude that the continuing course of conduct doctrine does not operate to toll the statutory limitation period of § 46a-82 (f) for acts of discrimination that allegedly occurred prior to December 2, 2018. The court, therefore, properly rendered summary judgment in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes (Rev. to 2017) § 46a-82 (f) provides in relevant part that "[a]ny complaint filed pursuant to this section must be filed within one hundred and eighty days after the alleged act of discrimination . . . ." Hereinafter, all references in this opinion are to the 2017 revision of the statute.

[2] Appended to the defendant's memorandum of law in support of its motion for summary judgment were a disciplinary report dated June 27, 2017, regarding a written warning that the defendant issued to the plaintiff for insubordination, poor attitude, and "not performing assigned duties," and a document memorializing the plaintiff's termination of employment with the defendant as of June 29, 2017.

[3] The defendant submitted portions of the plaintiff's December 23, 2021 deposition testimony in support of its motion for summary judgment. In that testimony, the plaintiff stated that, at the time that she informed the defendant of her pregnancy, there were no administrative positions available with the defendant. She further conceded that, although an office manager position opened in February, 2018, she was not fully qualified for that position.

[4] "Indeed.com is a website designed to be a resource for job seekers. It includes job postings, salary averages, and a forum where employees and applicants can discuss a company's work environment." *Alaska Structures, Inc.* v. *Hedlund*, 180 Wn. App. 591, 595, 323 P.3d 1082 (2014), review denied, 184 Wn. 2d 1026, 364 P.3d 119 (2016).

[5] December 2, 2018, was 180 days before May 31, 2019, the date the plaintiff filed her complaint with the commission. In the absence of any tolling, her complaint, therefore, would be untimely as to any acts of discrimination that occurred prior to December 2, 2018.

[6] At no time has the plaintiff alleged that waiver, consent, or some other equitable tolling applies in the present case. Rather, her claim is that the continuing course of conduct doctrine applies.

[7] In paragraphs 22 and 23 of her complaint, the plaintiff alleged that she "contacted the defendant in October, 2018, about returning to work" and that, "[i]n October, 2018, the defendant told [her] that she could apply for

a job."

[8] The full email from Meyer states: "[H]ow is everything and how is your little baby girl doing? Hopefully everything is fine and you recovered well from your cesarean section. As [I] have written [Schreiner] left [the defendant] end of December. Did you [speak] together or did something happened between you two before he left? [Calle] could not tell me, as he seems to have not been in contact. For your information: I will (need to) take over again the operations in [the defendant] from now on. So please keep me updated what is the / your status right now? Btw.: I have been married in August and was on honeymoon in December 2018 to Costa Rica. If you ever have the chance to go to Costa Rica - you should. Lovely country."

[9] As this court has observed, "the continuing course of conduct doctrine is one classically applicable to causes of action in tort . . . ." *Fradianni* v. *Protective Life Ins. Co.*, 145 Conn. App. 90, 100 n.9, 73 A.3d 896, cert. denied, 310 Conn. 934, 79 A.3d 888 (2013). Our Supreme Court likewise has "recognized the continuing course of conduct doctrine in many cases involving claims sounding in negligence. For instance, we have recognized the continuing course of conduct doctrine in claims of medical malpractice. . . . [It] has also been applied to other claims of professional negligence in this state." (Citations omitted.) *Watts* v. *Chittenden*, 301 Conn. 575, 583–84, 22 A.3d 1214 (2011); see also id., 596 (holding that continuing course of conduct doctrine applies to intentional infliction of emotional distress claim).

In addition, our Supreme Court has explained that, when a plaintiff's complaint adequately apprises a defendant that the plaintiff is alleging a theory of "continued discrimination" on the part of the defendant, "discrete incidents occurring during a continuum of discriminatory employment practices may constitute fresh violations" of the act. (Emphasis omitted; internal quotation marks omitted.) *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 473, 559 A.2d 1120 (1989). In this appeal, the defendant has not argued that the continuing course of conduct doctrine does not apply to employment discrimination claims pursuant to § 46a-60 or that the plaintiff's complaint did not provide adequate notice that she was pursuing a continuing course of conduct claim.